Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Derek.Woodman@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

*Attorneys for Plaintiff Intuit Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## DIVISION OF SAN JOSE

| | |
|---|---|
| INTUIT INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>H&R BLOCK, INC., HRB TAX GROUP, INC.,<br>and HRB DIGITAL LLC,<br><br>                    Defendants. | Case No. 5:24-cv-00253-BLF<br><br>**AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1        Plaintiff Intuit Inc. ("Intuit"), on personal knowledge as to its own acts and on

2    information and belief as to all other acts based on its own and its attorneys' investigation,

3    alleges as follows:

4                                    **INTRODUCTION**

5        1.       H&R Block, Inc., HRB Tax Group, Inc., and HRB Digital LLC (collectively,

6    "H&R Block" or "Defendants") are making false and misleading price comparisons between its

7    products and Intuit's TurboTax products by falsely representing:  (1) that expert and artificial-

8    intelligence (AI) help is available for less with H&R Block (at $35) than with TurboTax (at $89),

9    when in reality TurboTax offers expert and AI help to nearly 60 million taxpayers for $0; (2) that

10   H&R Block's paid do-it-yourself (DIY) products are comparable to TurboTax's Live Assisted

11   product and are less expensive, when in reality, the comparable H&R Block product costs *more*

12   than the TurboTax product; and (3) that the price of TurboTax's Live Full Service product starts

13   at $169 when in reality it starts at $89.

14       2.       Intuit brings this case to stop this false and misleading marketing through which

15   H&R Block is attempting to gain an unfair competitive advantage and tarnish TurboTax's hard-

16   earned reputation in the online tax-preparation space.

17       3.       Intuit advertises, markets, promotes, distributes, and sells products with the brand

18   name "TurboTax," a suite of online tax-preparation products and services that assist consumers

19   with preparing and filing their taxes.  With TurboTax, Intuit seeks to alleviate consumer stress

20   associated with a financial issue that affects nearly every household in America—filing taxes—

21   by simplifying the tax-preparation process so that consumers can file their taxes with ease and

22   confidence.  Because tax preparation involves one of the most sensitive and important aspects of

23   a consumer's financial life—implicating the amount of money consumers make and how much

24   they must pay the government—the reputation of tax-preparation providers is critical to their

25   acceptance and adoption by consumers.

26

27

28                                        -1-

4.      Every year, tax preparation software companies vigorously compete for business, but this year H&R Block crossed the line from earnest competition to unlawful deception.  At this moment, H&R Block's website is making false and misleading claims about TurboTax's products.  Those claims include false, misleading, and incomplete comparisons between H&R Block and TurboTax online tax-preparation products in an effort to undermine TurboTax's reputation and to unfairly bolster its own.

5.      H&R Block represents that its paid DIY products offer expert and AI help starting at $35, while TurboTax offers such expert and AI support starting at $89.  In reality, TurboTax's Live Assisted product offers expert and AI help to the over 60 million consumers who qualify for $0 from now until March 31.

6.      H&R Block's comparison between its paid DIY products starting at $35 to TurboTax's Live Assisted product at $89 is also false and misleading because those products offer materially different features.  TurboTax Live Assisted includes, for no extra charge, a final review in which a tax expert looks at every line of the taxpayer's return to ensure its accuracy. H&R Block charges a minimum of $55 extra dollars for their comparable "Tax Pro Review." Yet when comparing products, H&R Block makes no mention of this.  Consumers who view H&R Block's claims are likely to be misled into believing that H&R Block is offering comparable products at lower prices than TurboTax, when that is demonstrably false.

7.      H&R Block is also falsely representing that TurboTax Live Full Service has a starting price of $169.  But the starting price is actually $89, the same as H&R Block's comparable full-service product.

8.      H&R Block's false and misleading statements are causing immediate and mounting harm to Intuit and consumers.  Every day that those claims remain in the market, H&R Block is deceiving customers who otherwise might have filed their taxes with TurboTax into using H&R Block's products.  The false claims are also undermining the stellar reputation that Intuit has worked hard for years to foster with consumers.  Both of those harms are exacerbated

by the fact that the tax season lasts just over three months—spanning from January to April 15. At this moment, just weeks before the IRS begins accepting tax returns, tens of millions of taxpayers are researching their tax-filing options and deciding which product they will use, and many have already submitted their returns to a tax preparer for filing.  But one company—H&R Block—is misleading taxpayers into buying a product they are led to believe is a better deal, but is not.  Consumers who see those false claims and choose to file with H&R Block will end up paying more for less, without knowing the truth about TurboTax's products.  And because taxes get filed annually, TurboTax may lose customers not just for a year, but for many years to come.

9.    For all these reasons, H&R Block's false and misleading advertising should not be permitted to continue a moment longer.  Intuit has filed this suit to vindicate its right to engage in a fair and competitive market, without being subject to false and misleading advertisements by a competitor designed unfairly to gain customers, destroy or undermine Intuit's reputation, and erode consumer goodwill towards TurboTax.

## THE PARTIES

10.    Plaintiff Intuit Inc. is a Delaware corporation with its principal office or place of business at 2700 Coast Ave., Mountain View, California 94043.  It advertises, markets, and sells TurboTax, a brand of online tax-preparation products and services.

11.    Defendant H&R Block, Inc. is a Missouri corporation with its principal office or place of business at One H&R Block Way, Kansas City, Missouri 64105.  It advertises, markets, and sells tax-preparation products and services, including online tax-preparation products, under the H&R Block brand.

12.    Defendant HRB Tax Group, Inc. is a Missouri corporation with its principal office or place of business at One H&R Block Way, Kansas City, Missouri 64105.  HRB Tax Group, Inc. is a subsidiary of H&R Block, Inc. and participates in advertising, marketing, and selling tax-preparation products and services, including online tax-preparation products, under the H&R Block brand.

13.     Defendant HRB Digital, LLC is a Delaware limited liability company with its principal office or place of business at One H&R Block Way, Kansas City, Missouri 64105. HRB Digital LLC is a subsidiary of H&R Block, Inc. and participates in advertising, marketing, and selling tax-preparation products and services, including online tax-preparation services, under the H&R Block brand.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the Lanham Act claim pursuant to Article III of the Constitution and 28 U.S.C. §1331.

15.     This Court has supplemental jurisdiction over the related state law claims pursuant to Article III of the Constitution and 28 U.S.C. §1367(a).

16.     This Court has personal jurisdiction over Defendants because each has purposefully availed itself of the privilege of doing business in this District and engaged in tortious acts causing injury in this District.  Defendants offer for sale and extensively advertise their tax-preparation services throughout California and to California consumers in this District, where they also have numerous retail locations.  This advertising includes unlawful false advertising comparing their products with Intuit's TurboTax products, a tortious act causing injury to consumers and Intuit, a corporation headquartered in this District.  Because this action arises out of those unlawful tortious acts, this Court has personal jurisdiction over Defendants.

17.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c).

## DIVISIONAL ASSIGNMENT

18.     Assignment is proper to the San Jose division of this District under Local Rule 3-2(c)-(e) and Local Rule 3-5(b) as a substantial part of the events or omissions which give rise to this claim occurred in Santa Clara County, where Intuit is headquartered.

# FACTUAL ALLEGATIONS

*Intuit's Products and Services*

19.     TurboTax is the brand of a suite of Intuit's online tax-preparation products and services.

20.     The TurboTax online brand encompasses three tiers of products that offer different levels of tax-filing assistance—Do-It-Yourself ("DIY"), Live Assisted, and Live Full Service.  Within those product tiers, the price a consumer pays depends on their specific tax situation and the forms needed to complete the tax return.

21.     The TurboTax DIY product is available to consumers who want to complete their taxes themselves with the help of the TurboTax online software.  Taxpayers can manually input information or upload their tax documents for the TurboTax software to input their information in the correct places on their tax forms.

22.     The TurboTax DIY product (along with all other TurboTax online products) includes access to artificial-intelligence (AI) capabilities, including Intuit Assist, a financial assistant powered by AI.  Intuit Assist provides personalized answers to taxpayers' tax questions, proactively works to help prevent errors and ensure return accuracy, and provides a variety of other ways to help consumers with their tax returns.  For example, if a taxpayer misses a field when entering their mortgage interest, Intuit Assist can bring it to the customer's attention to correct.  And a taxpayer confused about why they owe more in taxes than last year could see how their tax bill was determined, with Intuit Assist explaining the primary factors that make up their return.  Intuit Assist can also explain why a taxpayer does or does not qualify for certain tax credits based on the information and documents the taxpayer provided.  These AI-driven features can also help update the taxpayer's tax checklist based on the information and documents the taxpayer has provided.

23.     The TurboTax DIY product (along with all other TurboTax online products) also provides access to TurboTax product specialists.  These product specialists assist customers with

questions about the TurboTax platform, such as troubleshooting how to upload a document or enter information.

24.    The TurboTax DIY product (along with all other TurboTax online products) comes with thorough guarantees to ensure customer satisfaction and protection, including:

    a.   TurboTax's 100% Accurate Calculations Guarantee, which reimburses a taxpayer for any IRS or state penalty or interest incurred because of a TurboTax calculation error.

    b.   The Maximum Refund Guarantee, which allows customers to get a refund for the applicable TurboTax federal and/or state purchase price paid, if the customer gets a larger refund or smaller tax due from another tax preparation method.

    c.   The Audit Support Guarantee, which allows customers who receive an audit letter for a 2023 TurboTax individual, TurboTax Live Assisted Business, or TurboTax Full Service Business return to obtain one-on-one question-and-answer support with a tax professional.

    d.   TurboTax's Tax Return Lifetime Guarantee, which extends coverage of the 100% accurate calculations, audit support, and maximum refund guarantees for the full 7-year lifespan of a tax return.

    e.   And the Satisfaction Guarantee, which requires customers to pay only when they are satisfied with TurboTax's services, as reflected in their decision to electronically file or print the tax return prepared using a TurboTax online product.

25.    Before a tax return is submitted to the IRS by the TurboTax DIY product (or any TurboTax product), the return is subjected to an automated accuracy and error check.  This automated review checks for missing entries and potentially incorrect or inaccurate information.

26.    The TurboTax Live Assisted product provides unlimited live help from tax experts, a final review by a tax expert before filing, and the 100% Accurate, Expert-Approved Guarantee.

27.    TurboTax tax experts are available to answer tax-related questions, such as whether an expense can be claimed as a deduction or the tax consequences of changing jobs across states.  Those experts are easily accessible.  When customers start with the Live Assisted product, they are asked whether they would like to talk to an expert.  If the customer responds affirmatively, they are connected directly to an expert either through chat, video call, or phone call, depending on their preference.

28.    Before they file their tax return, customers using TurboTax Live Assisted can connect with a TurboTax tax expert for a final line-by-line review, allowing the expert to review the tax return and answer any questions the customer might have.  If during that review, the tax expert identifies that material changes are needed to ensure the substantive accuracy of the tax return, the tax expert will collect and review the taxpayer's tax documents, make any necessary changes, and sign and file the return for the consumer.  There is no additional charge for this final review.

29.    The final review by a tax expert is provided in addition to the automated review conducted on every tax return submitted by TurboTax.  An automated review is fundamentally different than a line-by-line review by a human tax expert, who will personally correct and then sign and file a return if any material changes are needed.  Indeed, Intuit's data reflects that customers place a lot of value in knowing that an expert is available to provide a final review of their tax return.

30.    Under the 100% Accurate, Expert-Approved Guarantee included in the Live Assisted product, TurboTax will cover any IRS or state penalty or interest paid by a customer resulting from any error made by a TurboTax expert while providing tax advice or introduced after an expert review.

31. The TurboTax Live Full Service product provides taxpayers with the most comprehensive expert help. In TurboTax Live Full Service, TurboTax matches the taxpayer with a tax expert who then prepares, signs, and files the taxpayer's return. The taxpayer only needs to provide the expert with their tax forms, similar to how an accountant or other tax professional would complete a taxpayer's return in a traditional setting.

32. Returns filed using TurboTax Live Full Service also receive the 100% Accurate, Expert-Approved Guarantee.

33. For consumers who are filing an IRS Form 1040 and are claiming limited credits only, the TurboTax DIY product is totally free. The TurboTax Live Assisted product is similarly free for eligible consumers who file by March 31. Consumers who qualify can file both their federal and state taxes for $0.

34. More than half of consumers who file their taxes online have simple tax returns filed on IRS Form 1040 with limited credits and therefore qualify to file for free using the TurboTax DIY and Live Assisted products. More than 60 million U.S. taxpayers will likely qualify for those free offerings this year. Historically, more than 10 million taxpayers have filed their tax returns using TurboTax's free products each year.

35. The price of TurboTax Live Full Service begins at $89 for simple returns.

36. For taxpayers with more complex tax situations, the cost of TurboTax DIY, Live Assisted, and Live Full Service products depends on the schedules and forms required to complete the return.

37. For taxpayers who want to itemize deductions and who own a home, for example, the TurboTax DIY product would start at $39 and TurboTax Live Assisted would start at $89, with the filing of a state return as an additional cost.

38. For taxpayers who sold stock and own a rental property, the TurboTax DIY product would start at $89 and TurboTax Live Assisted would start at $169, with the filing of a state return as an additional cost.

*H&R Block's Products and Services*

39.     H&R Block's online tax-preparation software and services include two tiers of products: H&R Block Do-It-Yourself ("DIY") and H&R Block "File with a Tax Pro."

40.     The H&R Block DIY product tier itself includes four separate products: Free Online, Deluxe, Premium, and Self-Employed.

41.     H&R Block Free Online is available for taxpayers with "simple tax returns," described as returns with W-2 and unemployment income; claiming the Earned Income Credit and Child Tax Credit; claiming student tuition, payments, and loan interest deductions; and reporting retirement income.

42.     H&R Block DIY Deluxe is available for taxpayers with more complex tax situations, for example, those who own a home, have 1099 income, have child and dependent care expenses, or who want to itemize deductions.

43.     H&R Block DIY Deluxe currently costs $35 for federal returns and an additional $37 for each state return.

44.     H&R Block advertises that its DIY Deluxe product—but not DIY Free Online—comes with live expert help and AI Tax Assist.  Unlike the AI capabilities in TurboTax, H&R Block's AI Tax Assist is effectively a search-engine.  It pulls documents and instructions from H&R Block databases, serving as a generalized tax encyclopedia and product support feature. AI Tax Assist appears unable to apply its knowledge to the taxpayer's actual circumstances or data and cannot answer any personalized tax questions.  AI Tax Assist also serves as a gatekeeper to reaching live tax experts.  Taxpayers seeking to talk to a real person must ask AI Tax Assist to facilitate that connection, which sometimes requires asking multiple times before actually being put in contact with an expert.

45.     H&R Block DIY Premium is available for taxpayers who need to report stocks, bonds, and other investment income; report cryptocurrency sales; or want to claim rental income

1    and deductions.  H&R Block DIY Premium includes the same AI Tax Assist and live expert help

2    features offered in H&R Block DIY Deluxe.

3          46.    H&R Block DIY Premium currently costs $65 for federal returns and an

4    additional $37 for each state return.

5          47.    H&R Block DIY Self-Employed is available for taxpayers who have business

6    income and deductions, want to claim small business asset depreciation, or want to track

7    business expenses.

8          48.    H&R Block DIY Self-Employed costs $85 for federal returns and an additional

9    $37 for each state return.

10         49.    None of H&R Block's DIY products include a final review by a tax expert before

11    filing.  Instead, H&R Block offers a final expert review as a separate add-on branded as "Tax Pro

12    Review."  Recognizing that "Tax Pro Review" provides a different experience for consumers,

13    H&R Block also markets a separate lineup of its DIY products with that "Tax Pro Review," as

14    shown in the screenshot below.  With "Tax Pro Review," a tax expert checks the taxpayer's

15    completed tax return for accuracy and any missed deductions or credits.  This review can take up

16    to 24 hours to begin.  If a taxpayer wanted to purchase H&R Block DIY Deluxe with "Tax Pro

17    Review," they would need to pay $100, which is actually more expensive than the purportedly

18    comparable TurboTax offering, which starts at $89.

| ■ Free Online + Tax Pro Review | ■ Deluxe + Tax Pro Review | ■ Premium + Tax Pro Review | ■ Self-Employed + Tax Pro Review |
|---|---|---|---|
| **Great option for simple tax returns** | **Good for filers with dependents** | **Ideal for investors and rental property owners** | **For self-employed business owners** |
| **$55** | **$100** | **$160** | **$180** |
| + $0 per state filed | + $37 per state filed | + $37 per state filed | + $37 per state filed |
| Get started | Get started | Get started | Get started |

5:24-CV-00253-BLF                                                    AMENDED COMPLAINT

50.    H&R Block also offers a separate "File with a Tax Pro" product, in which a tax professional prepares and files the consumer's tax return.  The price for that product starts at $89 for a federal return and can increase depending on the complexity of the taxpayer's tax situation.  For taxpayers with W-2 income and dependents, for example, H&R Block's File with a Tax Pro product starts at $185 to file a federal return, plus an additional fee for each state return.

***H&R Block's Misleading Advertising Claims***

51.    H&R Block offers online tax-preparation products that compete directly with TurboTax's products.

52.    Last year, 45 million returns were filed using TurboTax's tax-preparation products compared to the approximately 20 million returns filed by H&R Block across its in-person and online services.

53.    In an effort to convince TurboTax customers to switch to H&R Block, H&R Block has previously leveraged marketing that compares or contrasts its products to TurboTax's.

54.    H&R Block's marketing this year is no different: H&R Block's website and other marketing materials in interstate commerce prominently and repeatedly refer to TurboTax's products and the features they offer.

55.    But this year H&R Block's references to TurboTax have devolved into making false, misleading, and deceptive statements about TurboTax's products, including incorrect and incomplete comparisons between TurboTax and H&R Block products.  Those advertisements likely deceived a substantial portion of consumers, as they were featured on H&R Block's homepage, other webpages, and email and other ads.  And because the advertisements misrepresent the cost and features of specific H&R Block and TurboTax products, they are likely to influence consumer choices about which products to purchase.

56.    H&R Block makes at least three false and misleading comparisons between H&R Block and TurboTax products on its website:  (1) that expert and AI help is available for less with H&R Block (at $35) than with TurboTax (at $89); (2) that H&R Block's paid DIY products

1    are comparable to TurboTax's Live Assisted product; and (3) that TurboTax's Full Service

2    product starts at $169 when in reality it starts at $89.

3          57.    H&R Block's website homepage makes the first two false comparisons.  There,

4    H&R Block prominently advertises three of its tax-preparation products under the heading: "Fed

5    up with hidden fees?  Make the switch to H&R Block with upfront transparent pricing."

6    Immediately below that text, H&R Block asserts that a taxpayer can "File [their] taxes with

7    expert help starting at $35."  And beneath that, prominently in bold red letters: "TurboTax Live

8    Assisted Deluxe price: **$89**."  The relevant part of the homepage is circled in the screenshot

9    below.



58.     The message communicated is unmistakable: H&R Block offers DIY tax preparation with AI and expert assistance starting at $35, while TurboTax products with AI and expert assistance start at $89 (through TurboTax Live Assisted).  H&R Block also suggests that TurboTax's products may be even more expensive because of "hidden fees."

59.     Those messages are false and misleading.

60.     First, H&R Block is wrong to suggest that H&R Block's paid DIY products with AI and expert help are less expensive than TurboTax's products with AI assistance and expert help.  TurboTax Live Assisted includes AI and live expert assistance, and is currently available for $0 to over 60 million Americans.  H&R Block's marketing says nothing about that $0 price.  The magnitude of H&R Block's misrepresentation is staggering: for 60 million Americans, TurboTax products with AI and expert assistance are at least $35 *less* expensive than H&R Block products with AI and expert assistance.  H&R Block's representation that TurboTax products with only AI assistance start at $89 is also incorrect because AI support is available in TurboTax DIY products for $0 and $39.

61.     Second, H&R Block's comparison misleadingly suggests its $35 paid DIY product and TurboTax's Live Assisted Deluxe are comparable.  They are not.  Most significantly TurboTax Live Assisted includes the option of a final review by a tax expert covered by an accuracy and audit support guarantee.  None of H&R Block's paid DIY products include such a review.  Instead, H&R Block markets a separate product lineup that includes the DIY products "+ Tax Pro Review" (expert final review).  A screenshot showing the pricing of H&R Block's products including "Tax Pro Review" is shown below.



62.    To obtain even nominally the same features as TurboTax Live Assisted at H&R Block, consumers must pay $100, not $35.  TurboTax Live Assisted includes AI assistance, expert help, and expert final review.  To obtain all three at H&R Block, customers must purchase H&R Block DIY "Deluxe + Tax Pro Review" for $100, plus an additional $37 for each state return.

63.    Even so, the comparison is false and misleading because TurboTax's AI capabilities, which include its AI-powered financial assistant, Intuit Assist, and live expert help are substantially more robust than H&R Block's live expert and AI assistance.

64.    Intuit Assist, unlike H&R Block's AI Tax Assist, provides personalized responses to tax questions, based on the consumers' specific circumstances and the tax information they provide.  H&R Block's AI Tax Assist functions more like a search engine than a modern AI assistant: it offers only generic responses about H&R Block products and tax laws, presumably drawn from H&R Block's databases or website.  It cannot apply its knowledge to the taxpayers' actual circumstances or data: when asked about a consumer's specific tax situation, the AI responds, in effect, "I can't help" (as shown below).  H&R Block's failure to disclose this material difference renders any attempt to compare H&R Block and TurboTax products with AI assistance misleading and incomplete.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15       65.      H&R Block's live expert assistance similarly lacks much of the utility of the

16   expert assistance provided by TurboTax Live Assisted.  H&R Block's experts are gated behind

17   the AI interface, and H&R Block prioritizes its AI Tax Assist over providing access to live

18   experts.  Accordingly, taxpayers are forced to try to use the AI interface in the first instance,

19   decreasing the likelihood that they will speak to an actual expert.  When a customer does request

20   to speak to an expert, sometimes it takes multiple requests before they are connected to one.

21   And when the customer succeeds in reaching a live tax expert, there is no integration between

22   the AI and the live expert to facilitate following up on unsatisfactory or unclear answers from the

23   AI.  In TurboTax Live Assisted, experts are available to answer customers' questions and review

24   tax returns, whether by phone, video, or chat.  And customers can connect with those live experts

25   directly when they start with the product.

26
27
28

-15-

66.     H&R Block's homepage comparing its $35 paid DIY product including AI and expert assistance with TurboTax's Live Assisted Deluxe, allegedly starting at $89, is therefore false and misleading in numerous ways: TurboTax Live Assisted with AI and expert assistance actually starts at $0 for 60 million Americans and AI assistance is available in all TurboTax online products, starting at $0 and $39; H&R Block's "Deluxe + Tax Pro Review" product with nominally all the same features as TurboTax Live Assisted costs $100, not $35; and those features are in fact substantially and materially different in ways that matter to consumers.

67.    A third false price comparison is on a separate webpage dedicated to comparing H&R Block's products to TurboTax's products (https://www.hrblock.com/offers/turbotax-price-comparison/).  This webpage expressly misrepresents the cost of TurboTax Live Full Service when, in red letters, H&R Block asserts the starting price is $169.  In fact, the starting price for TurboTax Live Full Service is $89.  A screenshot is shown below.

5:24-CV-00253-BLF                                                    AMENDED COMPLAINT

1    68.    This page also doubles down on H&R Block's false and misleading assertions

2 that TurboTax is more expensive than H&R Block and includes hidden fees: "Skip the

3 TurboCharges this year and make the switch to Block."

4    69.    H&R Block makes a similar statement on the webpage

5 (https://www.hrblock.com/online-tax-filing/) shown to consumers after they click to "Learn

6 More" about the $35 offer on the homepage.  Here H&R Block asserts in large font that it offers

7 "Do-it-yourself taxes without the extra TurboCharges."  A screenshot from that webpage is

8 shown below.

9

70.     Previously that webpage stated that taxpayers could "Get help from our NEW AI Tax Assist & live tax pros" for "At least $54 less than TurboTax Live." For all the reasons stated above, that comparison is false and misleading. For 60 million Americans, TurboTax Live Assisted is available for $0, which is not "at least $54" more than H&R Block's product. Again, H&R Block is claiming its products cost less than TurboTax when in reality they cost more. A screenshot of that webpage is shown below.



71.     H&R Block's focus on TurboTax, and on gaining TurboTax customers through any means, is reinforced at various places throughout the H&R Block website and in ads. For example, on the same webpage where H&R Block references "TurboCharges," H&R Block also states that "Switching from TurboTax is easy" and highlights a purported review from a taxpayer who switched from TurboTax to H&R Block.

72.     In an email advertisement shown below, H&R Block asks, "TurboTired? Switch and Save with Block. Switch from TurboTax now," and "Join the 5 million+ who switched to Block last year." H&R Block is deliberately creating the misleading impression that 5 million TurboTax users switched to H&R Block, presumably because their products are cheaper and do

-19-

not include hidden fees.  But 5 million customers did not switch from TurboTax to H&R Block last year, a fact seemingly confirmed by H&R Block's own website, where they also claim 5 million+ users switched to H&R Block, without any reference to TurboTax.  And as explained above, TurboTax is not more expensive, nor does it include hidden fees.



***Intuit's Unsuccessful Attempts To Resolve This Issue Without Litigation***

73.    Before filing this lawsuit and seeking emergency relief, Intuit sought to address H&R Block's false and misleading marketing without needing to resort to litigation.

74.    On January 6, 2024, Intuit sent a letter to Senior Corporate Counsel at H&R Block.  The letter explained why H&R Block's advertising claims are misleading and false, asked that H&R Block remove the false price comparisons, and requested assurances that H&R

-20-

AMENDED COMPLAINT

Block would cease and desist from making further false claims about the price of TurboTax products.

75.     On January 8, 2024, counsel for Intuit and H&R Block, including outside counsel at O'Melveny & Myers LLP, met telephonically to discuss the January 6 letter.  During the phone call, Intuit reiterated why H&R Block's advertising claims are false and misleading, and again sought assurances that H&R Block would remove these claims and cease from making any others.  In response to H&R Block's questions, Intuit reiterated that to the extent H&R Block was referencing the TurboTax Live Assisted and Live Full Service products, the claims were false and misleading.  H&R Block indicated that it would respond to TurboTax's letter later that day or the following morning.

76.     On the evening of the following day, counsel from O'Melveny & Myers LLP sent a letter responding on behalf of H&R Block, refusing to remove the false and misleading marketing claims.

77.     Since those communications, H&R Block has doubled down on its false and misleading marketing by making inconsequential changes that did not cure the advertising's deceptive nature.  For example, on January 12, H&R Block changed the text on its homepage, replacing a reference to "TurboTax Live Deluxe" with "TurboTax Live Assisted Deluxe."  And H&R Block has made similar changes to other webpages.  While that change shows that H&R Block has the power to alter its advertising with ease, it does nothing to improve the claims' truthfulness.  The comparison to TurboTax Live Assisted Deluxe is still a false and misleading comparison of materially different products.  Intuit explained to H&R Block why that would be the case.  H&R Block's refusal to correct the deceptive statements after having the opportunity to do so, suggests that H&R Block is acting in bad faith.

78.     Because Intuit could not resolve this issue privately without involving the court, it has been forced to file this lawsuit.

*H&R Block's False And Misleading Claims Are Causing Immediate And Mounting Harm To Intuit*

79.    H&R Block's false and misleading advertising is causing both competitive and financial injury to Intuit every day that the claims remain in the market.

80.    H&R Block's false marketing is creating an impression in the market that TurboTax is more expensive than H&R Block's online products, which is not the case.  That false impression is damaging TurboTax's long-held and hard-earned reputation for offering top-quality tax-prep products for a good value.  Intuit cannot quickly or easily undo that reputational harm, which could take years to counteract and may never be eradicated.

81.    The false representation that H&R Block products are cheaper also leads consumers, including would-be TurboTax consumers, to visit H&R Block's website and start their tax-return filing process, causing Intuit to lose business and therefore revenue.

82.    Third-party reporting has further amplified H&R Block's false and misleading claims, and it confirms that those claims are influencing perceptions in the online tax-prep space.

83.    In early January 2024, Business Insider published an article comparing H&R Block and TurboTax prices.  The article inaccurately recited the TurboTax price for its Live Assisted product at $89, rather than the price of the TurboTax DIY product that costs less and offers the same coverage and features as the H&R Block DIY product referenced.

84.    To ensure consumers are receiving accurate information as they consider which tax-preparation provider to use, Intuit clarified its product and pricing lineup to Business Insider.  The publication then updated the article on January 9, 2023, with accurate information reflecting that TurboTax's products have a starting price of $0 (not $89) and that those products are comparable to H&R Block's DIY products.

85.    The incorrect pricing comparisons reflected in a third-party article, which closely mirrored and appeared at the same time as H&R Block's false advertising, demonstrates the need to halt such false marketing claims.

86.    Immediate relief is also needed given the significance of the short tax-filing window to Intuit's business.

87.    Under the tax schedule set by federal law and the IRS, tax returns will first be accepted starting on January 29, and all tax returns must be filed by Tax Day on April 15.  Thus, a tax-preparation provider's business for the year is mostly compressed into a single period spanning just 77 days.

88.    Tax-preparation companies are able to expand that 77-day period modestly by accepting tax-returns before they can be submitted to the IRS.  For example, TurboTax began accepting returns on January 4.  Accordingly, this year TurboTax will do most of its business and earn most of its revenue during the 102 days between January 4 and April 15.

89.    To put it simply, considering that 102-day period as a whole, each day of the tax season amounts to approximately 1% of TurboTax's business for the year.  Considering that TurboTax's revenues exceeded $4 billion last year, H&R Block's false marketing threatens up to $40,000,000 in revenue every day.

90.    The period between January 4 and when the IRS begins accepting tax returns on January 29 is also significant because during that period taxpayers begin researching tax-preparation providers and start completing their returns with one of those providers.  Since January 4, more than 50,000 taxpayers have submitted their returns to TurboTax, and the rate at which taxpayers are submitting returns will only increase as it gets closer to January 29 and more taxpayers receive their W-2s and other tax documents.  Intuit anticipates that between now and February 15, the "First Peak" of the season, more than 10 million customers will file their returns, constituting approximately 25% of TurboTax's business for the year.

1      91.    For these reasons it is critically important to Intuit's business—including its

2  ability to effectively and fairly compete against H&R Block and avoid unwarranted reputational

3  harms—that the false and misleading claims in H&R Block's marketing be taken down

4  immediately.  Each day that goes by results in more consumers seeing and being misled by those

5  false claims, resulting in more consumers believing incorrectly that TurboTax's offerings are

6  more expensive than H&R Block's and choosing to use H&R Block's online tax-preparation

7  products based on those false representations.  This reputational harm cannot be adequately

8  compensated by monetary damages after-the-fact.

9                          **FIRST CAUSE OF ACTION**

10      **H&R Block's Marketing Violates The Lanham Act, 15 U.S.C. §1125(a)**

11      92.    Plaintiff restates and incorporates by reference each and every allegation of the

12  preceding paragraphs.

13      93.    Defendants' marketing and advertising of their online tax-preparation services

14  constitute false and misleading representations under the Lanham Act.

15      94.    Defendants have made, and continue to make, false and misleading price

16  comparisons between H&R Block and TurboTax products.

17      95.    Defendants' false and misleading statements include:

18          a.    That the "starting price" for TurboTax Live Assisted is $89, when the

19              actual starting price for 60 million Americans is $0;

20          b.    That the starting price for TurboTax Live Full Service is $169, when the

21              actual starting price is $89;

22          c.    That H&R Block's paid DIY products cost "at least $54 less than

23              TurboTax Live" when comparable TurboTax products start at $0;

24          d.    Comparing H&R Block's $35 DIY product to "TurboTax Live Assisted

25              Deluxe: $89" when the comparable H&R Block product actually costs

26              $100;

27

28

e.  Comparing H&R Block's $35 DIY product with AI and expert assistance to "TurboTax Live Assisted Deluxe: $89" to represent that TurboTax products with AI and expert assistance start at $89, when actually TurboTax offers products with AI and expert assistance starting at $0 for 60 million Americans;

f.  Any other statements asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that the starting price of the TurboTax product comparable to H&R Block DIY Deluxe is anything other than $0;

g.  Advertising and marketing equating H&R Block's DIY Deluxe product with TurboTax Live Assisted when there are substantial material differences between these products that matter to reasonable consumers, including the availability of final expert review;

h.  Advertising and marketing equating H&R Block and TurboTax's AI and expert assistance when there are substantial material differences between H&R Block and TurboTax's AI and expert assistance;

i.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that TurboTax charges hidden fees, including but not limited to "Fed up with hidden fees? Make the switch to H&R Block"; "TurboTired? Switch and save with Block"; "Skip the TurboCharges this year and make the switch to Block"; and "Do-it-yourself taxes without the extra TurboCharges";

j.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that H&R Block "has upfront transparent pricing";

k.    Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that 5 million or more TurboTax users have switched to H&R Block, including but not limited to "Join the 5 million+ who switched to Block last year" in a context clearly suggesting all 5 million switchers were prior TurboTax customers; and

l.    Any other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or price of any TurboTax product in any other way.

96.    Defendants' false and misleading claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to the real and relative costs and features of TurboTax products.

97.    Defendants' false and misleading statements are material because they are likely to influence consumer purchasing decisions.

98.    Defendants placed these false and misleading statements and claims in interstate commerce by disseminating these representations nationwide.

99.    As a direct and proximate cause of these false and misleading statements, Intuit has been and will continue to be damaged.  Intuit's damages include actual damages in the form of lost profits from reduced demand for TurboTax products; the disgorgement of any profits that Defendants unfairly realized, retained, or gained as a result of its false and misleading advertising; and the costs associated with this action.

100.    Based on the foregoing, Defendants have engaged in false and deceptive representations that are likely to cause confusion or deceive consumers as to the cost and nature of TurboTax's online tax-preparation products, in violation of 15 U.S.C. §1125(a)(1)(A).

101.    On information and belief, Defendants have engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against them.

102.    Defendants' acts make this an exceptional case under 15 U.S.C. §1117(a), and Intuit is thus entitled to an award of its attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**H&R Block's Marketing Violates California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§17200, *et seq.***

103.    Plaintiff restates and incorporates by reference each and every allegation of the preceding paragraphs.

104.    The UCL prohibits acts of "unfair competition," including all "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

105.    Defendants' advertising as described above constitute unlawful, unfair, and fraudulent business practices.

106.    Defendants' advertising statements are unlawful because they violate the Lanham Act and California's False Advertising Law.

107.    Defendants have engaged in unfair competition by misrepresenting the cost and features of the products of a competitor to promote Defendants' own products.  Such practices prevent consumers from making fully informed decisions regarding which online tax preparation product to use.

108.    Defendants' statements are fraudulent because the material misrepresentations are likely to deceive and mislead a reasonable consumer.

109.    Defendants' fraudulent, deceptive, and unlawful advertising statements include:

      a.    That the "starting price" for TurboTax Live Assisted is $89, when the actual starting price for 60 million Americans is $0;

      b.    That the starting price for TurboTax Live Full Service is $169, when the actual starting price is $89;

c.  That H&R Block's paid DIY products cost "at least $54 less than TurboTax Live" when comparable TurboTax products start at $0;

d.  Comparing H&R Block's $35 DIY product to "TurboTax Live Assisted Deluxe: $89" when the comparable H&R Block product actually costs $100;

e.  Comparing H&R Block's $35 DIY product with AI and expert assistance to "TurboTax Live Assisted Deluxe: $89" to represent that TurboTax products with AI and expert assistance start at $89, when actually TurboTax offers products with AI and expert assistance starting at $0 for 60 million Americans;

f.  Any other statements asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that the starting price of the TurboTax product comparable to H&R Block DIY Deluxe is anything other than $0;

g.  Advertising and marketing equating H&R Block's DIY Deluxe product with TurboTax Live Assisted when there are substantial material differences between these products that matter to reasonable consumers, including the availability of final expert review;

h.  Advertising and marketing equating H&R Block and TurboTax's AI and expert assistance when there are substantial material differences between H&R Block and TurboTax's AI and expert assistance;

i.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that TurboTax charges hidden fees, including but not limited to "Fed up with hidden fees? Make the switch to H&R Block"; "TurboTired? Switch and save with Block"; "Skip the TurboCharges this year and make the

-28-

AMENDED COMPLAINT

1       switch to Block"; and "Do-it-yourself taxes without the extra

2       TurboCharges";

3           j.      Any advertising and marketing asserting, implying, or assuming, or that

4                   could be understood by reasonable consumers to assert, imply, or assume

5                   that H&R Block "has upfront transparent pricing";

6           k.      Any advertising and marketing asserting, implying, or assuming, or that

7                   could be understood by reasonable consumers to assert, imply, or assume

8                   that 5 million or more TurboTax users have switched to H&R Block,

9                   including but not limited to "Join the 5 million+ who switched to Block

10                  last year" in a context clearly suggesting all 5 million switchers were prior

11                  TurboTax customers; and

12          l.      Any other advertisement, marketing, or other statement that misrepresents,

13                  or could be interpreted as misrepresenting, the characteristics, nature,

14                  and/or price of any TurboTax product in any other way.

15      110.    Intuit has been and will continue to be damaged as a direct and proximate result

16  of Defendants' unlawful, unfair, and fraudulent business practices, as described above.

17  Accordingly, Intuit is entitled to an injunction prohibiting Defendants from continuing their

18  practices in violation of the UCL, as described above.

19                              **THIRD CAUSE OF ACTION**

20          **H&R Block's Marketing Violates California's False Advertising Law,**

21                      **Cal. Bus. & Prof. Code §§17500, *et seq.***

22      111.    Plaintiff restates and incorporates by reference each and every allegation of the

23  preceding paragraphs.

24      112.    The FAL makes it "unlawful for any person, firm, corporation or association ...

25  with intent directly or indirectly ... to perform services, professional or otherwise ... to induce the

26  public to enter into any obligation relating thereto, to make or disseminate or cause to be made or

27

28
                                        -29-

1    disseminated before the public in this state, ... in any newspaper or other publication, or any

2    advertising device ... including over the Internet, any statement, concerning that real or personal

3    property or those services, professional or otherwise ... which is untrue or misleading, and which

4    is known, or which by the exercise of reasonable care should be known, to be untrue or

5    misleading." Cal. Bus. & Prof. Code § 17500.

6           113.    Defendants' untrue and misleading advertising statements include:

7                   a.    That the "starting price" for TurboTax Live Assisted is $89, when the

8                         actual starting price for 60 million Americans is $0;

9                   b.    That the starting price for TurboTax Live Full Service is $169, when the

10                        actual starting price is $89;

11                  c.    That H&R Block's paid DIY products cost "at least $54 less than

12                        TurboTax Live" when comparable TurboTax products start at $0;

13                  d.    Comparing H&R Block's $35 DIY product to "TurboTax Live Assisted

14                        Deluxe: $89" when the comparable H&R Block product actually costs

15                        $100;

16                  e.    Comparing H&R Block's $35 DIY product with AI and expert assistance

17                        to "TurboTax Live Assisted Deluxe: $89" to represent that TurboTax

18                        products with AI and expert assistance start at $89, when actually

19                        TurboTax offers products with AI and expert assistance starting at $0 for

20                        60 million Americans;

21                  f.    Any other statements asserting, implying, or assuming, or that could be

22                        understood by reasonable consumers to assert, imply, or assume that the

23                        starting price of the TurboTax product comparable to H&R Block DIY

24                        Deluxe is anything other than $0;

25                  g.    Advertising and marketing equating H&R Block's DIY Deluxe product

26                        with TurboTax Live Assisted when there are substantial material

27

28

-30-

differences between these products that matter to reasonable consumers, including the availability of final expert review;

h.    Advertising and marketing equating H&R Block and TurboTax's AI and expert assistance when there are substantial material differences between H&R Block and TurboTax's AI and expert assistance;

i.    Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that TurboTax charges hidden fees, including but not limited to "Fed up with hidden fees? Make the switch to H&R Block"; "TurboTired? Switch and save with Block"; "Skip the TurboCharges this year and make the switch to Block"; and "Do-it-yourself taxes without the extra TurboCharges";

j.    Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that H&R Block "has upfront transparent pricing";

k.    Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that 5 million or more TurboTax users have switched to H&R Block, including but not limited to "Join the 5 million+ who switched to Block last year" in a context clearly suggesting all 5 million switchers were prior TurboTax customers; and

l.    Any other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or price of any TurboTax product in any other way.

AMENDED COMPLAINT

114.    Defendants knew or should have known, through the exercise of reasonable care, that their representations were false and misleading and likely to deceive consumers and cause them to purchase Defendants' H&R Block online tax preparation products.

115.    Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

116.    Section 17535 provides that the Court may enjoin any corporation or other person who violates the FAL and may make such orders or judgments as may be necessary to prevent the use of such practices, or which may be necessary to restore to any person in interest any money or property which may have been acquired by means of such practices.

117.    Intuit has been and will continue to be damaged as a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, as described above. Accordingly, Intuit is entitled to an injunction prohibiting Defendants from continuing their practices in violation of the FAL, as described above.

## FOURTH CAUSE OF ACTION

### H&R Block's Marketing Violates Missouri Common Law

118.    Plaintiff restates and incorporates by reference each and every allegation of the preceding paragraphs.

119.    Under Missouri common law, an entity is liable for unfair competition, in the form of false advertising, when it advertises goods or services in a way likely to deceive or mislead prospective patrons to the commercial detriment of another. Courts apply the same analysis to unfair competition claims under Missouri common law as the analysis for false advertising under the Lanham Act. *See SI03, Inc. v. Musclegen Rsch., Inc.*, 2020 WL 2468412, at *2, *2 n.3 (E.D. Mo. May 13, 2020).

120.    As described above, H&R Block's advertising violates the Lanham Act because it is false and misleading.

121.    Defendants' false and misleading statements include:

-32-

a.    That the "starting price" for TurboTax Live Assisted is $89, when the actual starting price for 60 million Americans is $0;

b.    That the starting price for TurboTax Live Full Service is $169, when the actual starting price is $89;

c.    That H&R Block's paid DIY products cost "at least $54 less than TurboTax Live" when comparable TurboTax products start at $0;

d.    Comparing H&R Block's $35 DIY product to "TurboTax Live Assisted Deluxe: $89" when the comparable H&R Block product actually costs $100;

e.    Comparing H&R Block's $35 DIY product with AI and expert assistance to "TurboTax Live Assisted Deluxe: $89" to represent that TurboTax products with AI and expert assistance start at $89, when actually TurboTax offers products with AI and expert assistance starting at $0 for 60 million Americans;

f.    Any other statements asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that the starting price of the TurboTax product comparable to H&R Block DIY Deluxe is anything other than $0;

g.    Advertising and marketing equating H&R Block's DIY Deluxe product with TurboTax Live Assisted when there are substantial material differences between these products that matter to reasonable consumers, including the availability of final expert review;

h.    Advertising and marketing equating H&R Block and TurboTax's AI and expert assistance when there are substantial material differences between H&R Block and TurboTax's AI and expert assistance;

i.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that TurboTax charges hidden fees, including but not limited to "Fed up with hidden fees? Make the switch to H&R Block"; "TurboTired? Switch and save with Block"; "Skip the TurboCharges this year and make the switch to Block"; and "Do-it-yourself taxes without the extra TurboCharges";

j.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that H&R Block "has upfront transparent pricing";

k.  Any advertising and marketing asserting, implying, or assuming, or that could be understood by reasonable consumers to assert, imply, or assume that 5 million or more TurboTax users have switched to H&R Block, including but not limited to "Join the 5 million+ who switched to Block last year" in a context clearly suggesting all 5 million switchers were prior TurboTax customers; and

l.  Any other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or price of any TurboTax product in any other way.

122.  For the same reasons, Defendants' conduct violates the Missouri common law of unfair competition: it misleads and deceives prospective taxpayers shopping for online tax-preparation products about the cost and nature of TurboTax's products.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

Wherefore, Intuit respectfully requests that this Court enter judgment in its favor and against H&R Block, Inc., HRB Tax Group, Inc., and HRB Digital, LLC, and enter an order granting the following relief:

1.      Temporarily, preliminary, and permanently enjoining Defendants and their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them from disseminating false, misleading, or otherwise unlawful claims concerning TurboTax products, including through faulty comparisons to Defendants' products as authorized by 15 U.S.C. §1116(a) and Cal. Bus. & Prof. Code §§17203, 17535;

2.      Awarding all damages Intuit sustained as a result of Defendants' unlawful conduct, including damages for corrective advertising, and treble amounts authorized by 15 U.S.C. §1117(a);

3.      Awarding Intuit all profits received by Defendants from sales made and revenues collected as a results of its unlawful acts, including treble amounts authorized by 15 U.S.C. §1117(a);

4.      Awarding Intuit the reasonable costs incurred in bringing this action, authorized by 15 U.S.C. §1117(a);

5.      Awarding Intuit pre- and post-judgment interest; and

6.      Awarding such other and further relief the Court deems just and proper.

5:24-CV-00253-BLF                                    AMENDED COMPLAINT

1    Dated: January 18, 2024                Respectfully Submitted,

2                                           By: /s/ Sonal N. Mehta

3
                                            Sonal N. Mehta (CA Bar No. 222086)
4                                           Wilmer Cutler Pickering
                                            Hale and Dorr LLP
5                                           2600 El Camino Real, Suite 400
                                            Palo Alto, CA 94306
6                                           Telephone: (650) 858-6000
                                            Facsimile: (650) 858-6100
7                                           Sonal.Mehta@wilmerhale.com

8                                           David Z. Gringer
                                            Kalyn Heyen
9                                           Wilmer Cutler Pickering
                                            Hale and Dorr LLP
10                                          7 World Trade Center
                                            250 Greenwich St.
11                                          New York, NY 10007
                                            Telephone: (212) 230-8800
12                                          Facsimile: (212) 230-8888
                                            David.Gringer@wilmerhale.com
13                                          Kalyn.Heyen@wilmerhale.com

14                                          Derek A. Woodman
                                            Wilmer Cutler Pickering
15                                          Hale and Dorr LLP
                                            2100 Pennsylvania Ave NW
16                                          Washington, DC 20037
                                            Telephone: (202) 663-6000
17                                          Facsimile: (202) 663-6363
                                            Derek.Woodman@wilmerhale.com
18
                                            *Attorneys for Plaintiff Intuit Inc.*
19

20

21

22

23

24

25

26

27

28

-36-

5:24-CV-00253-BLF                                    AMENDED COMPLAINT