Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 230-6363
Derek.Woodman@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

*Attorneys for Plaintiff and*
*Counterclaim-Defendant Intuit Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| INTUIT INC.,<br><br>                Plaintiff,<br><br>   vs.<br><br>HRB TAX GROUP, INC.<br>and HRB DIGITAL LLC,<br><br>                Defendants.<br><br>   and<br>─────────────────────────<br>HRB DIGITAL LLC,<br><br>               Counterclaim-Plaintiff,<br><br>   vs.<br><br>INTUIT INC.,<br><br>               Counterclaim-Defendant. | **Case No. 5:24-cv-00253-BLF**<br><br>**INTUIT INC.'S NOTICE OF MOTION, MOTION TO DISMISS HRB DIGITAL LLC's COUNTERCLAIMS, AND MOTION TO STRIKE**<br><br>Hearing Date:  August 15, 2024<br>Time:  9:00 a.m.<br><br>Judge: Hon. Beth Labson Freeman |

# **TABLE OF CONTENTS**

Introduction .................................................................................................................2

Statement of Facts .......................................................................................................4

    A.      TurboTax Products..................................................................................4

    B.      Block's Comparative Marketing And The Challenged TurboTax Ads ..............5

    C.      This Proceeding.....................................................................................6

    D.      Block's Counterclaims ............................................................................7

Legal Standards...........................................................................................................8

Argument ....................................................................................................................9

I.     Block Fails To Establish Article III Standing....................................................9

II.    Block Fails to State a Claim Under the Lanham Act And Parallel State Laws ..............11

    A.      Block Does Not Allege Facts Showing Intuit's Advertisements Are False, Misleading, Or Deceptive Under The Lanham Act .................................................11

          1.    Block Fails To Plausibly Allege That Intuit's Advertisements Mislead Customers By Conveying That The Expert Final Review Is "Automatic"....12

          2.    Block Fails To Plausibly Allege That Intuit's Advertisements Mislead Customers By Conveying That The Expert Final Review Would In Every Instance Include A Comprehensive "Line-by-Line" Review........................18

    B.      Block's Mistaken And Bad-Faith Reliance On Statements Made During This Proceeding............................................................................................21

    C.      Block's State-Law Counterclaims Must Also Be Dismissed.................................25

Conclusion ...............................................................................................................25

-ii-

## TABLE OF AUTHORITIES

Page(s)

## CASES

*23andMe, Inc. v. Ancestry.com DNA, LLC,*

   356 F. Supp. 3d 889 (N.D. Cal. 2018) ............................................................8

*Allbirds, Inc. v. Giesswein Walkwaren AG,*

   2020 WL 6826487 (N.D. Cal. June 4, 2020) ...........................................8, 10

*Ashcroft v. Iqbal,*

   556 U.S. 662 (2009)........................................................................................8

*Avis Rent A Car Sys., Inc. v. Hertz Corp.,*

   782 F.2d 381 (2d Cir. 1986)....................................................................12, 14

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544 (2007)......................................................................................10

*BPI Sports, LLC v. ThermoLife Int'l LLC,*

   2020 WL 10180910 (S.D. Fla. Jan. 9, 2020) ...............................................21

*Cisco Sys., Inc. v. Beccela's Etc., LLC,*

   403 F. Supp. 3d 813 (N.D. Cal. 2019) ......................................................8, 19

*Clapper v. Amnesty Int'l USA,*

   568 U.S. 398 (2013)........................................................................................9

*Clorox Co. v. Reckitt Benckiser Grp. PLC,*

   398 F. Supp. 3d 623 (N.D. Cal. 2019) ....................................................11, 12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*

   173 F.3d 725 (9th Cir. 1999) .......................................................................21

*Garibaldi v. Bank of Am. Corp.,*

   2014 WL 1338563 (N.D. Cal. Apr. 1, 2014) ...............................................24

*In re Finjan Holdings, Inc.*,

    58 F.4th 1048 (9th Cir. 2023) .........................................................................................8

*Indiezone, Inc. v. Rooke*,

    2014 WL 4354122 (N.D. Cal. Sept. 2, 2014) ...............................................................25

*JGX, Inc. v. Handlery*,

    2018 WL 984856 (N.D. Cal. Feb. 20, 2018) ..................................................9, 21, 22, 24

*Knievel v. ESPN*,

    393 F.3d 1068 (9th Cir. 2005) .......................................................................................16

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,

    2019 WL 160335 (N.D. Cal. Jan. 10, 2019) ............................................................12, 13

*LT Int'l Ltd. v. Shuffle Master, Inc.*,

    8 F. Supp. 3d 1238 (D. Nev. 2014) .................................................................................8

*Northstar Financial Advisors Inc. v. Schwab Investments*,

    779 F.3d 1036 (9th Cir. 2015) .......................................................................................16

*Olagues v. Musk*,

    2019 WL 3457831 (N.D. Cal. July 31, 2019)................................................................16

*Painter v. Blue Diamond Growers*,

    757 F. App'x 517 (9th Cir. 2018) .................................................................................21

*Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*,

    609 F. Supp. 3d 1092 (C.D. Cal. 2022) ...................................................................19, 20

*RingCentral, Inc. v. Nextiva, Inc.*,

    2021 WL 2476879 (N.D. Cal. June 17, 2021)..............................................................25

*Rodriguez v. Newsom*,

    2019 WL 11583464 (N.D. Cal. July 22, 2019).............................................................21

*SI03, Inc. v. Musclegen Rsch., Inc.*,

    2020 WL 2468412 (E.D. Mo. May 13, 2020) ..............................................................25

-iv-

*Southland Sod Farms v. Stover Seed Co.*,
      108 F.3d 1134 (9th Cir. 1997) ................................................................11, 12

*TrafficSchool.com, Inc. v. Edriver Inc.*,
      653 F.3d 820 (9th Cir. 2011) ....................................................................9, 10

*United States ex rel. Jones v. Sutter Health*,
      2021 WL 3665939 (N.D. Cal. Aug. 18, 2021) ...............................................24

*Walker Distributing Co. v. Lucky Lager Brewing Co.*,
      323 F.2d 1 (9th Cir. 1963) ...............................................................................9

**FEDERAL RULES**

Fed. R. Civ. P.
      9(b)................................................................................................................8, 19
      12(b)(1) ..........................................................................................................1, 8
      12(b)(6) .....................................................................................................1, 8, 25
      12(f).......................................................................................1, 3, 8, 9, 21, 22

**OTHER AUTHORITIES**

H&R Block, *Online Services Agreement*, https://www.hrblock.com/pdf/HRBlock-Online-
      Services-Agreement.pdf......................................................................................20

TurboTax, https://turbotax.intuit.com/personal-taxes/online/live/how-it-works.htm
      (last visited April 19, 2024) .......................................................................6, 16

1

## NOTICE OF MOTION AND MOTION

2     TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE THAT on August 15, 2024, or as soon thereafter as the matter may

4     be heard, in the Courtroom of The Honorable Beth Labson Freeman, Robert F. Peckham

5     Federal Building, 280 South 1st Street, San Jose, California, 95113, Intuit Inc. will and hereby

6     does move to dismiss the counterclaims in HRB Digital LLC's Counterclaims and Defendants'

7     Amended Answer to Intuit's Amended Complaint (Dkt. 50), and to strike allegations in the

8     Counterclaims concerning (1) the declaration submitted by Elizabeth Berger (Dkt. 6-2) and (2)

9     statements made during the January 22, 2024 hearing on Intuit's motion for a temporary

10    restraining order.

11    Intuit moves to dismiss HRB Digital LLC's counterclaims under Federal Rule of Civil

12    Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil

13    Procedure 12(b)(6) for failing to state a claim against Intuit.  Pursuant to Rule 12(f), Intuit also

14    moves to strike allegations concerning Ms. Berger's declaration and the TRO hearing because

15    those allegations are irrelevant and inaccurate.  Intuit's motion is based on this Notice of

16    Motion and Motion, the following Memorandum of Points and Authorities, the pleadings and

17    record in this action, the argument of counsel, and any other matters that may be presented to

18    the Court.

19    ## ISSUE TO BE DECIDED

20    1.     Whether, under Federal Rule of Civil Procedure 12(b)(1), HRB Digital LLC

21    pleads facts sufficient to establish Article III standing.

22    2.     Whether, under Federal Rule of Civil Procedure 12(b)(6), HRB Digital LLC's

23    counterclaims state a claim for relief under the Lanham Act, California False Advertising Law,

24    California Unfair Competition Law, and Missouri Common Law.

25    3.     Whether, under Federal Rule of Civil Procedure 12(f), references in HRB Digital

26    LLC's counterclaims to Ms. Berger's declaration and the January 22, 2024 hearing on Intuit's

27    motion for a temporary restraining order should be stricken.

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

HRB Digital LLC ("Block") agreed to take down its false and misleading advertising after the Court recognized that "it was inclined to find that Intuit has established a likelihood of success on the merits" on its deceptive-advertising claim.  TRO Hr'g Tr. 62:1-2.  At no point during the briefing or multi-hour hearing on that motion—in which the parties and Court discussed in detail the parties' competing product offerings—did Block or its counsel suggest that Intuit's advertisements or submissions to the Court were anything other than accurate.  Nearly two months later, Block decided to amend its answer to bring meritless counterclaims against Intuit in an effort to cast aspersions on Intuit.  Even a cursory review of the allegedly deceptive advertisements reveals that they are not misleading.  Faced with that reality, Block seeks to obscure what the advertisements actually say by misstating those ads, and *also* misstating the contents of an Intuit employee declaration and the transcript from the temporary-restraining-order hearing.  Block cannot now invent deception through its own misleading recitation of court documents and the ads themselves.

To start, Block misrepresents Intuit's statements during this proceeding and, without basis, asserts that Intuit attempted to deceive the Court.  Counterclaims ¶3 (Dkt. 50).  A review of what Intuit actually said shows that it did no such thing.  For example, Block selectively quotes the declaration from Intuit employee Elizabeth Berger to argue that Intuit "intend[ed] to convey" both to the public and to this Court that the expert final review associated with TurboTax's Live Assisted product occurs "automatically" and that it always, without exception, involves a line-by-line review of each customer's return.  *Id.* ¶¶20, 31.  In reality, the declaration states that "[b]efore filing their tax return, customers using TurboTax Live Assisted **can request** that a tax expert review their tax return and identify potential issues for further discussion," and that "[c]ustomers **can** also receive a final line-by-line review of their return by the tax expert."  Berger Decl. ¶15 (Dkt. 6-2) (emphasis added).  Block's reliance on statements during the temporary-restraining-order hearing fare no better.  Block attacks Intuit

for not correcting the record when the Court suggested that the final expert review was automatic, Counterclaims ¶¶21-22, but fails to disclose that the questions were directed at **Block's counsel** and the fact that the Court later clarified (before Intuit had an opportunity to speak) that it understood that "[t]he customer is not having a conversation with the TurboTax Live expert unless they want to" and that the customer would "have to follow up," TRO Hr'g Tr. 43:4-7.  In short, Intuit has consistently represented that the expert-final-review feature lacking in Block's purportedly comparable product makes "a tax expert … *available* to conduct a line-by-line review," with the additional benefit that "if the expert determines that material changes are needed to ensure the substantive accuracy of the return, the expert will personally correct and then sign and file the return."  Intuit TRO Mot. 5 (emphasis added). Making that final review available at no extra cost (but not mandatory or "automatic") allows consumers to take advantage of this valued service, without forcing them to engage with experts when they do not want to.  The Court should strike Block's irrelevant and inaccurate discussion of Ms. Berger's declaration and the TRO hearing under Federal Rule of Civil Procedure 12(f).

Block also misstates and misinterprets Intuit's advertisements.  Contrary to Block's allegations, Intuit's advertisements do not falsely promise customers an "automatic" or "self-executing" expert final review that is included in every instance a line-by-line analysis.  In reality, the advertisements truthfully state that "TurboTax Live *includes* a 100% accurate, expert final review at no extra charge," Counterclaims ¶19 (emphasis added), during which "experts *can* review your tax return before you file, so you can be 100% confident it's done right," *id.* ¶16 (emphasis added).  Intuit thus accurately described the expert final review available in TurboTax Live Assisted both in its advertisements and in its submissions to this Court.  Because the ads do not convey the messages that Block alleges, Block's counterclaims fail to state a claim under the Lanham Act, California False Advertising Law, California Unfair Competition Law, and Missouri Common Law.  Block also fails to plausibly allege that any ads were deceptive because Intuit does automatically provide customers the option to

1    connect with an expert for a final review, where customers can ask any final questions and

2    obtain a complete review of their return.  In other words, all customers are prompted with the

3    choice of talking to an expert for a final review or declining that final review if they do not

4    want it.

5           Block's counterclaims independently fail because Block does not establish standing.

6    Block alleges no facts—as opposed to threadbare legal conclusions—suggesting that it was in

7    any way injured by the allegedly deceptive advertising.  Absent such an injury, the Court lacks

8    the authority to consider Block's claims.

9           For these reasons, Block's counterclaims should be dismissed with prejudice, and all

10    references to Ms. Berger's declaration and the TRO hearing should be stricken.

11                               **STATEMENT OF FACTS**

12    **A.    TurboTax Products**

13           Intuit offers a suite of online tax-preparation products under the brand "TurboTax."

14    Counterclaims ¶13.  TurboTax offers three tiers of online products that provide different levels

15    of tax-filing assistance: Do-It-Yourself ("DIY"), Live Assisted, and Live Full Service.  *Id.*

16    With the DIY product, customers prepare their own returns using TurboTax software.  *Id.*

17    With Full Service, a tax expert completes a taxpayer's return and files it for her.  *Id.*

18           TurboTax Live Assisted—the focus of Block's counterclaims—allows taxpayers to

19    complete their tax returns with help from both the TurboTax software and human experts.

20    Counterclaims ¶13.  Live Assisted also includes—at no extra cost—a "final expert review" of

21    a customer's tax return by a human tax expert.  *Id.* ¶14.  To facilitate that final review,

22    TurboTax shows Live Assisted customers who are nearly finished with their return a prompt

23    stating that their final expert review is available.  *Id.* ¶¶24-25.  One of the screens shown to

24    customers during that process explains that "[a] tax expert can answer any final questions

25    before you file" and that the review is "included" in Live Assisted.  *Id.* ¶25.  The screen also

26    asks the customer whether they "[w]ould like to connect with an expert," and makes clear that

27    selecting "yes" allows them to "get … an expert review before you file."  *Id.*  Customers then

28

1    may identify any questions they have before being connected with an expert. *Id.* ¶26.  Block

2    does not dispute that Live Assisted includes this "final expert review," but instead alleges that

3    Intuit misrepresents how that review works.  *See id.* ¶¶2, 14, 24-26.

4                  **B.      Block's Comparative Marketing And The Challenged TurboTax Ads**

5             Tax preparation companies, such as TurboTax and Block, vigorously compete for

6    business every tax season.  Am. Compl. ¶4; Am. Answer ¶4.  As in years past, this tax season

7    Block relied on comparative advertising to compete against TurboTax, directly comparing its

8    products with supposedly analogous TurboTax products.  Am. Compl. ¶¶53-54; Am. Answer

9    ¶¶53-54.  Block has advertised its products underneath banners such as "Skip the

10   TurboCharges this year and make the switch to Block," Am. Compl. ¶68, and "Do-it-yourself

11   taxes without the extra TurboCharges," *id.* ¶69.  Block also advertised that their products

12   allow taxpayers to "[f]ile your taxes with expert help starting at $35," while comparing that

13   offering to "TurboTax Live Assisted Deluxe Price: $89."  *Id.* ¶57; Am. Answer ¶57.  That

14   advertising was false and misleading because (among other reasons) the TurboTax Live

15   Assisted product includes at no extra charge an "expert final review," *see* Block TRO Opp. 9-

16   10, while Block charges a minimum of $55 more for a similar feature, Am. Compl. ¶50; Am.

17   Answer ¶50.  At the time of the comparison, and through March 31, the "starting at" price of

18   TurboTax Live Assisted was $0.

19            Rather than comparing its products to Block's, Intuit's advertising focuses on the

20   features provided in TurboTax products.  For example, Intuit markets that TurboTax Live

21   Assisted includes an "expert final review" feature.  These advertisements inform customers

22   that TurboTax Live Assisted customers have the option of receiving a final review of their tax

23   return by an expert for no additional cost.  Counterclaims ¶¶16-19.  The TurboTax website, for

24   instance, advertises that customers can "[k]now [their taxes are] done right with an expert final

25   review," explaining that "experts can review your tax return before you file, so you can be

26   100% confident it's done right."  *Id.* ¶16.  Likewise, a short video on the TurboTax website

27   describing TurboTax Live Assisted features states that experts "can meet with you when it's

28

convenient for you and provide a final review of your return once you're ready to file." TurboTax, https://turbotax.intuit.com/personal-taxes/online/live/how-it-works.htm (last visited April 19, 2024) (cited in Counterclaims ¶18). Another TurboTax webpage listing TurboTax Live Assisted features states that "TurboTax Live includes a 100% accurate, expert final review at no extra charge." Counterclaims ¶19. And a TurboTax Live Assisted email advertisement highlights the ability to "[c]onnect with live tax experts on demand" who "can help fix any mistakes and explain what's next," and "[f]inish with an expert final review, done right, guaranteed." *Id.* ¶17. None of the challenged ads use the words "automatic," "self-executing," "comprehensive," "line-by-line," or anything close.

## C.    This Proceeding

Despite Intuit's best efforts to resolve its dispute about Block's comparative advertising without litigation, Block largely refused to take down advertisements making false and misleading price comparisons. As a result, Intuit filed suit against Block on January 15, 2024 (and an amended complaint on January 18, 2024, adding HRB Tax Group, Inc., and HRB Digital LLC as defendants), asserting claims under the Lanham Act, California's Unfair Competition Law, California's False Advertising Law, and Missouri Common Law. *See* Dkt. 1, 18. Alongside the complaint, Intuit filed a motion seeking a temporary restraining order and preliminary injunction to prevent Block's continued use of false and misleading advertisements. Dkt. 6.

Intuit's complaint, motion, and accompanying declarations all explained that TurboTax Live includes a "final expert review" feature that was available at no extra cost. For example, Intuit's complaint alleged that "TurboTax Live Assisted includes *the option* of a final review by a tax expert." Am. Compl. ¶61 (emphasis added). With that final expert review, "customers ... *can* connect with a TurboTax tax expert for a final line-by-line review" "[b]efore they file their tax return." *Id.* ¶28 (emphasis added). Intuit's TRO motion similarly explained that, "[i]n the final review" "include[d] at no extra cost" with TurboTax Live Assisted, "a tax expert is *available* to conduct a line-by-line review." Intuit TRO Mot. 4-5

(emphasis added).  And Ms. Berger's declaration filed in support of the TRO motion explained that "[b]efore filing their tax return, customers using TurboTax Live Assisted *can* request that a tax expert review their tax return" and "*can* also receive a final line-by-line review of their return by the tax expert."  Berger Decl. ¶15 (emphasis added).

On January 22, 2024, the Court held a hearing on Intuit's TRO motion, during which the Court recognized that it was "inclined to find that Intuit has established a likelihood of success on the merits of the false comparison in that middle tile."  TRO Hr'g Tr. 62:1-3.  As the Court told Block's counsel, "I think it's a false comparison …. It's not true that [TurboTax Live Assisted Deluxe] is the TurboTax Product you have to buy to get what you get, starting at $35, from Block."  *Id.* at 36:18-23.  After the hearing, the Court entered the parties' stipulated consent order, in which Block agreed "to take down the challenged representations ... during the pendency of this case, until a preliminary injunction hearing might occur."  *Id.* at 80:7-13; *see also* Dkt. 38.

### D.    Block's Counterclaims

On March 15, 2024, nearly two months after agreeing to the consent order, Block amended its answer to assert four counterclaims against Intuit.  Dkt. 50.  Mirroring the claims brought by Intuit, Block alleges violations of the Lanham Act, California's Unfair Competition Law, California's False Advertising Law, and Missouri Common Law based on supposed misrepresentations in Intuit's marketing and advertising concerning the "expert final review" offered in TurboTax Live Assisted.  Counterclaims ¶¶35-64.

Block alleges that Intuit makes two false or misleading representations about the "expert final review."  First, Block alleges that Intuit represents that its "expert final review" is "automatic[]" and "self-executing" when—according to Block—it is not automatic because customers must request it.  *See* Counterclaims ¶¶14-15.  Second, Block alleges that Intuit represents that its "expert final review" always entails a comprehensive, line-by-line review of the customer's tax return "without exception" when it in fact does not.  *See id.* ¶¶14, 29-32.

INTUIT INC.'S MOTION TO DISMISS
                                                                         AND MOTION TO STRIKE

1    Intuit now moves to dismiss Block's counterclaims under Federal Rule of Civil

2    Procedure 12(b)(1) and 12(b)(6), and moves to strike Block's references to Ms. Berger's

3    declaration and the TRO hearing under Federal Rule of Civil Procedure 12(f).

4                                    **LEGAL STANDARDS**

5    "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction

6    under Federal Rule of Civil Procedure 12(b)(1)." *Allbirds, Inc. v. Giesswein Walkwaren AG*,

7    2020 WL 6826487, at *2 (N.D. Cal. June 4, 2020). And under Federal Rule of Civil

8    Procedure 12(b)(6), dismissal is required when a counterclaim fails to "contain sufficient

9    factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

10   U.S. 662, 678 (2009); *see also Allbirds*, 2020 WL 6826487, at *2. Although the Court must

11   accept well-pleaded facts, it need not accept "[t]hreadbare recitals of the elements of a cause of

12   action … supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678-679. And

13   "[w]hen a general conclusion in a complaint contradicts specific facts retold in a document ...

14   incorporated by reference in the complaint, or subject to judicial notice, those specific facts are

15   controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 (9th Cir. 2023). In other words,

16   a court also "need not 'accept as true allegations that contradict matters properly subject to

17   judicial notice' 'allegations that are merely conclusory, unwarranted deductions of fact, or

18   unreasonable inferences.'" *Allbirds*, 2020 WL 6826487, at *2.

19   The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to

20   Lanham Act claims that sound in fraud or intentional misrepresentation. *See, e.g.*, *Cisco Sys.,*

21   *Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 827 (N.D. Cal. 2019); *23andMe, Inc. v.*

22   *Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018). Under that standard,

23   Block must plead its counterclaims "with particularity," Fed. R. Civ. P. 9(b), "identify[ing] the

24   who, what, when, where, and how of the misconduct charged, as well as what is false or

25   misleading about the purportedly fraudulent statement, and why it is false," *LT Int'l Ltd. v.*

26   *Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1246 (D. Nev. 2014).

27

28

1      Finally, under Federal Rule of Civil Procedure 12(f), a court "may strike from a

2  pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

3  12(f). A matter is immaterial when it "has no essential or important relationship to the claim

4  for relief." *JGX, Inc. v. Handlery*, 2018 WL 984856, at *6 (N.D. Cal. Feb. 20, 2018).

5                                    **ARGUMENT**

6      Block's counterclaims suffer from two fatal defects.

7      *First*, Block fails to plead any facts that establish Article III standing. Its

8  counterclaims are devoid of even general assertions of injury, which this Court has found

9  insufficient to confer standing.

10      *Second*, Block fails to state a plausible claim for relief on any of its claims. Block's

11  own factual allegations—particularly the screenshots of the challenged ads—show that Intuit

12  did not make the statements Block asserts. The advertisements instead show that Intuit's

13  marketing claims about the "expert final review" available in TurboTax Live Assisted are

14  truthful and not misleading. Block cannot avoid this reality by misrepresenting the ads or by

15  levying baseless accusations against an Intuit employee and Intuit's counsel. Simply put,

16  Block fails to articulate how or why the advertisements are false or misleading in light of what

17  the ads actually say. This dooms Block's claims. And because Block's Lanham Act claim

18  fails, so do its derivative state-law claims.

19      The Court should grant Intuit's motion and dismiss the counterclaims with prejudice.

20  The Court should also strike Block's irrelevant and inaccurate references to Ms. Berger's

21  declaration and the TRO hearing under Rule 12(f).

22  **I.    BLOCK FAILS TO ESTABLISH ARTICLE III STANDING**

23      A counterclaim plaintiff must independently establish Article III standing, *see Walker*

24  *Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 10 (9th Cir. 1963), which Block has

25  not done. Article III standing requires (1) an injury-in-fact (2) caused by "the challenged

26  action" (3) that is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S.

27  398, 409 (2013). Those constitutional prerequisites—which "implicate the subject matter

28

1    jurisdiction of the court"—are "independent" of "standing under the Lanham Act" and must be

2    analyzed separately and first.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th

3    Cir. 2011).

4         While allegations of direct competition might suffice to establish injury and statutory

5    standing to sue under the Lanham Act, "allegations of direct competition, standing alone, are

6    *not* sufficient" to establish injury for purposes of Article III standing.  *Allbirds*, 2020 WL

7    6826487, at *4 (emphasis added).  Instead, a plaintiff must allege the "chain of inferences

8    showing how defendant's false advertising could harm plaintiff's business."  *Id.* (quoting

9    *TrafficSchool.com, Inc.*, 653 F.3d at 825).  Accordingly, in *Allbirds*, the Court concluded that

10   Giesswein failed to establish Article III standing by alleging only that Allbirds's allegedly

11   false advertising "draws sales away from Giesswein."  *Id.*  That allegation "f[ell] short on

12   creating a chain of inferences that Allbirds's false or misleading advertising harms

13   Giesswein's business."  *Id.*

14        Here, Block's allegations fall short of even the deficient allegations in *Allbirds*.  The

15   allegedly deceptive TurboTax advertising focused exclusively on TurboTax products, without

16   referencing or alluding to Block's products.  And Block alleges *no facts* concerning any

17   injuries it sustained as a result of that allegedly deceptive advertising.  *See* Counterclaims

18   ¶¶13-34.  The closest Block gets to alleging a constitutionally cognizable injury is its

19   conclusory legal assertion that Block "has been and will continue to be damaged" "[a]s a

20   direct and proximate cause of these false and misleading statements."  *Id.* ¶42; *see also id.*

21   ¶¶53, 60.  But Block's bald legal conclusions do not state a claim, s*ee Bell Atl. Corp. v.

22   Twombly*, 550 U.S. 544, 555, 564-565 (2007), and even if they could, it is not discernable how

23   or why Block would be injured.  Simply put, Block has not provided the "chain of inferences

24   showing how [Intuit's allegedly] false advertising could harm [Block's] business" required to

25   establish Article III standing.  *Allbirds*, 2020 WL 6826487, at *4.

26        By contrast, Intuit alleged in its complaint that Block's deceptive advertising was

27   "causing both competitive and financial injury to Intuit every day that the claims remain in the

28

market."  Am. Compl. ¶79.  Intuit expanded on those injuries by explaining that Block's

deceptive advertising was creating the mistaken "impression in the market that TurboTax is

more expensive than H&R Block's online products," "lead[ing] consumers … to visit H&R

Block's website and start their tax-return filing process[ and] causing Intuit to lose business."

*Id.* ¶¶80-81.  The challenged ads also injured Intuit by "damaging TurboTax's long-held and

hard-earned reputation for offering top-quality tax-prep products for a good value."  *Id.* ¶80.

Block offers no comparable injury allegations, presumably because it cannot do so.  Indeed,

unlike the challenged Block ads—which directly (and deceptively) compared Block and

TurboTax products—the TurboTax ads at issue here do not expressly or impliedly reference

H&R Block at all.  Instead, the TurboTax ads focus exclusively on describing TurboTax

product features.  Because Block has failed to allege injury from those ads, the counterclaims

should be dismissed.

## II.   BLOCK FAILS TO STATE A CLAIM UNDER THE LANHAM ACT AND PARALLEL STATE LAWS

### A.   Block Does Not Allege Facts Showing Intuit's Advertisements Are False, Misleading, Or Deceptive Under The Lanham Act

For a Lanham Act false-advertisement claim to survive a motion to dismiss, Block

must plausibly allege that Intuit made "(1) a false statement of fact … in a commercial

advertisement"; "(2) the statement actually deceived or has the tendency to deceive a

substantial segment of its audience; (3) the deception is material, in that it is likely to influence

the purchasing decision; (4) the defendant caused its false statement to enter interstate

commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false

statement … by direct diversion of sales from itself to defendant."  *Southland Sod Farms v.*

*Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  A statement can be false within the

meaning of the Lanham Act if it is "literally false, either on its face or by necessary

implication" or if it is "literally true but likely to mislead or confuse consumers."  *Id.*  Where

the claim depends on statements that are not literally false, a plaintiff "must plausibly suggest

-11-

1    a likelihood to mislead." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636

2    (N.D. Cal. 2019).

3            "When evaluating whether an advertising claim is literally false [or misleading], the

4    claim must always be analyzed in its full context." *Southland*, 108 F.3d at 1139.  In other

5    words, a court must "consider the advertisement in its entirety and not" permit "disputatious

6    dissection." *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986).

7    Under that holistic analysis, deceptive advertising claims should be dismissed where a plaintiff

8    selectively quotes advertisements but omits context that refutes the alleged deception.  *See*

9    *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, 2019 WL 160335, at *3-5 (N.D. Cal.

10   Jan. 10, 2019).  Thus, in *LegalForce* the court dismissed deceptive-advertising claims where

11   the advertisements' "context" and text around the allegedly deceptive claims revealed that the

12   ads did not actually say what was asserted.  *See id.*

13           Block alleges that Intuit's marketing makes two misrepresentations about the "expert

14   final review" available in TurboTax Live Assisted.  First, Block alleges that Intuit

15   advertisements mislead customers into believing that the expert final review is "automatic"

16   when, in fact, customers must take some affirmative steps—i.e., pressing a button that says

17   "Continue" to indicate that they wish to begin the review.  Second, Block alleges that Intuit's

18   advertisements mislead customers into believing that the expert final review involves a line-

19   by-line review of every tax return without exception, when it does not.  But even a cursory

20   review of the challenged advertisements "in [their] entirety," *Avis*, 782 F.2d at 385, reveals

21   that they do not expressly or implicitly convey the messages that Block alleges.  Block's

22   efforts to avoid that conclusion through its own misleading recitation of the ads—the kind of

23   "disputatious dissection" courts forbid, *id.*—fails.

24           1.    *Block fails to plausibly allege that Intuit's advertisements mislead
                   customers by conveying that the expert final review is "automatic"*

25

26           Block's counterclaims allege that Intuit's advertisements misrepresent that the final

27   review included with TurboTax Live Assisted is "automatic, self-executing … without any

28

need to ask questions or take any additional steps." Counterclaims ¶15. Block asserts that ads representing that expert final review is included in Live Assisted are misleading because customers "are required to take affirmative steps to request a final review by an Intuit tax expert." *Id.* ¶24. But it is plain from the face of the counterclaims that none of the four advertisements that Block identifies state or imply that the expert final review is automatic and entirely self-executing. To the contrary, those ads expressly market the *availability* of an expert final review, language that Block takes pains to exclude from its allegations. In fact, Block itself previously attested that "Intuit's marketing … expressly touts the fact that clients *can request* a 'final review' from a tax expert," Watts Decl. ¶32 (Dkt. 26) (emphasis added); *see also* TRO Opp. 6 (arguing based on "publicly advertised facts" that Intuit "offers a review by a live person at the end of the process if the user *requests* such a review and a tax professional is *available*")—directly contravening its current assertion that the ads say otherwise.

*First*, Block points to an advertisement that prominently states that, with TurboTax Live Assisted, "[o]ur experts **can** review your tax return before you file." Counterclaims ¶16 (emphasis added). As shown below, that advertisement does *not* say that the final review is automatic or self-executing. The advertisement instead conveys that experts "*can*" provide a final review, not that customers must accept it once offered. Block offers no allegations pleading how or why this advertisement misleads customers into thinking the final review is automatic despite the prominent statement to the contrary, or why this distinction is at all material. And Block does not dispute the accuracy of the ad's actual representations. Block cannot rewrite "can" as "will automatically," and the Court should refuse Block's invitation to do so. *See LegalForce*, 2019 WL 160335, at *3-5 (dismissing Lanham Act claim after considering what the ads actually said).

*Second*, Block alleges that a January 2024 email advertisement promised that "a TT Live Assisted customer *will* '[f]inish with an expert final review, done right, guaranteed.'" Counterclaims ¶17 (emphasis added; alteration omitted). But as shown below, the advertisement does not actually say that the customer "*will*" finish with an expert final review. Instead, **Block** **added** "will" to its description—presumably because it is the only way the ad could be read as saying what Block contends. In reality, the ad states, "Finish with an expert final review," which highlights only the *availability* of the expert final review. *Id.* That the expert final review is available, but not necessarily automatic, is reinforced by the prior bullet point explaining that "experts **can** help fix any mistakes and explain what's next." *Id.* (emphasis added). Block fails to allege any facts explaining how the actual text—when not improperly "dissect[ed]" and taken out of context, *Avis*, 782 F.2d at 385—conveys that the expert final review is automatic or how the ad is otherwise misleading. The word "guaranteed" does not change the ad's plain meaning: "Guaranteed" modifies "done right" and it does not state or imply a "guarantee" that an expert review will happen automatically.



*Third*, Block alleges that a video on the TurboTax website describing the features

provided in TurboTax Live Assisted conveys that an expert final review is automatic.

Counterclaims ¶18.  To support that assertion, Block quotes the video as saying that, "'with

TurboTax Live Assisted,' 'our real tax experts will be there' to 'provide a final review of your

return once you're ready to file' to 'ensure no mistakes were made' and the taxpayer 'is

getting every dollar [they] deserve.'"  *Id.*  But Block does not explain how these statements

mislead customers into believing incorrectly that the expert final review is automatic (i.e.,

forced on each customer).  In fact, all customers using TurboTax Live Assisted are presented

with the choice of whether to receive a final review, where real tax experts *are* there to provide

that final review and do in fact deliver that review when the customer agrees they want one.

And Block also fails to allege any facts that would render even its misguided view of the ads

important (i.e., material) to anyone.  Block thus fails to plausibly allege that the video is

misleading or deceptive in violation of the Lanham Act.

1    Block also disregards (and misrepresents) what the video actually says.  Block omits

2    that the voiceover expressly states that tax experts "***can*** meet with you when it's convenient

3    for you and provide a final review of your return once you're ready to file," as shown below.

4    *See* TurboTax, https://turbotax.intuit.com/personal-taxes/online/live/how-it-works.htm

5    (emphasis added) (cited in Counterclaims ¶18).  Courts can consider "documents whose

6    contents are alleged in a complaint and whose authenticity no party questions, but which are

7    not physically attached to the plaintiff's pleading," *Northstar Financial Advisors Inc. v.*

8    *Schwab Investments*, 779 F.3d 1036, 1043 (9th Cir. 2015), including material on websites, s*ee*

9    *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  This incorporation-by-reference

10   doctrine "prevents plaintiffs," like Block here, "from selecting only portions of documents that

11   support their claims, while omitting portions of those very documents that weaken—or

12   doom—their claims."  *Olagues v. Musk*, 2019 WL 3457831, at *3 (N.D. Cal. July 31, 2019).

13   Considering the full video (and not just Block's misleading excerpts) "doom[s]" Block's claim

14   because it reveals that the video markets only the *availability* of an expert final review, not

15   that the review is automatic and self-executing.  *Id.*  Indeed, the full quote shows the

16   implausibility of Block's allegations: an expert cannot meet with a customer at a convenient

17   time and provide a final review once the customer is ready without the customer identifying a

18   time that would be convenient and indicating when they are ready.  Contrary to Block's

19   allegations (and misleading quotations), that video in no way suggests that the final review is

20   "automatic."



INTUIT INC.'S MOTION TO DISMISS
                                                                         AND MOTION TO STRIKE

1    *Fourth*, Block points to a statement on TurboTax's website that "[o]nly TurboTax Live

2    includes a 100% accurate, expert final review at no extra charge" (shown below).

3    Counterclaims ¶19.  Block asserts that this language "plainly convey[s] to consumers who

4    purchase TT Live Assisted that a 'final expert review' will automatically be performed

5    without the consumer having to do anything."  *Id.* ¶20.  Even assuming that clicking a button

6    counts as doing "something," a statement that TurboTax Live "*includes* a[n] … expert final

7    review" does not convey that the review is "automatic" or "self-executing."  As any

8    reasonable consumer knows, various things are included in purchases that are not automatic.

9    For example, a gym membership might "include" a personal training session, but that does not

10   mean that the session happens automatically without scheduling it.  Similarly, an all-inclusive

11   resort stay might "include" a spa treatment, yet guests are still required to book the treatment.

12   Again, Block offers no explanation for how the use of the word "include[]" in this context

13   misleads customers into believing that the expert final review is automatic and self-executing,

14   and also offers no explanation for the significance of the distinction it wrongly raises.  Its

15   conclusory assertion that the ad is deceptive does not suffice to survive a motion to dismiss.



In all events, even if the ads did convey that the expert final review was "automatic" (they do not), and that claim was material, Block's allegations still fail because TurboTax automatically gives TurboTax Live Assisted customers the option to connect with an expert for a final review at no extra charge.  Block's allegations recognize that customers are automatically prompted to ask "any final questions" as part of the expert review "before you file."  Counterclaims ¶25.  In other words, it is impossible for customers to complete their taxes without being prompted to engage in the expert final review, and all customers get that review if they so choose.  Because Intuit automatically provides customers the option to connect with an expert for a final review, where customers can ask any final questions and obtain a complete review of their return (*see infra* Section II.A.2), Block fails to plausibly allege that any ads were deceptive.

> ### 2. Block fails to plausibly allege that Intuit's advertisements mislead customers by conveying that the expert final review would in every instance include a comprehensive "line-by-line" review

Block asserts that Intuit falsely advertises that the expert final review "will, *without exception*, involve a 'tax expert' undertaking a comprehensive 'line-by-line' review of the consumer's return to ensure complete accuracy."  Counterclaims ¶29 (emphasis added).  But the single advertisement that Block describes in support of this allegation states no such thing. *Id.* ¶30.  As shown below, that advertisement depicts a tax expert who states that he "finished reviewing your taxes," along with a list of tax information that he reviewed.  *Id.*  To state the obvious, the advertisement does not say that every final review will necessarily include a "comprehensive" or "line-by-line" review, terms not used in the ad.  *Id.* ¶29.  Nor does the advertisement imply that the expert final review will always involve some form of comprehensive or line-by-line review.  Instead, the advertisement conveys that TurboTax "experts ***can*** review your tax return before you file," while identifying a tax expert who might complete such a review and categories of tax information that might be addressed.  *Id.* ¶30 (emphasis added).  Block does not dispute that TurboTax experts "can" conduct such a review or that it "can" be comprehensive and line-by-line.  And Block offers no allegations explaining

how or why customers would interpret this ad as communicating that TurboTax will *necessarily* conduct a "comprehensive, all-inclusive review" that includes a "review and analysis of each line of the draft return." *Id.* ¶31. Conclusory assertions that Intuit is "duping customers," *id.* ¶34, are not enough to defeat a motion to dismiss.



Block's allegations concerning supposedly false promises of a line-by-line review also fail to satisfy Rule 9(b)'s heightened pleading requirements. *See Cisco Sys.*, 403 F. Supp 3d at 827. Instead of stating with particularity the facts surrounding the deception alleged, Block simply asserts that, "[u]pon information and belief, some consumers … are told that the expert cannot complete a review of every line of the consumer's return." Counterclaims ¶32. Thus, Block avers, TurboTax customers do not always get the service they are allegedly promised by the challenged advertisement. But Block provides no factual allegations concerning how, when, or why "some consumers … are told that the expert cannot complete a review of every line of the consumer's return." *Id.* Block fails to allege, for instance, when a consumer might be told that a line-by-line review is unavailable or why such a statement would be inconsistent with the allegedly deceptive advertising. Block's unexplained assertion on its own does not establish that customers were misled.

Moreover, that allegation should be disregarded because it is based only on "information and belief." Such allegations are permitted under Rule 9(b) only if "essential

1    information lies uniquely within another party's control," and "only if the pleading sets forth

2    the specific facts upon which the belief is reasonably based." *Pensmore Reinforcement Techs.,*

3    *LLC v. Cornerstone Mfg. & Distribution, Inc.*, 609 F. Supp. 3d 1092, 1102 (C.D. Cal. 2022).

4    Block satisfies neither prerequisite.

5         *First*, Block makes no attempt to identify any "essential information [that] lies

6    uniquely within another party's control."  Instead, as Block's complaint makes clear,

7    TurboTax's advertising and products are available to the public, as is the expert review.  Block

8    thus had access to the information needed to allege with particularity why the challenged ad is

9    deceptive.

10        *Second*, Block does not "set forth … specific facts" upon which its belief is based.

11   Instead, Block asserts that the line-by-line review purportedly promised "is not automatic,"

12   and that "consumers may need to pay to upgrade their TurboTax service … to guarantee that

13   they will receive an automatic and comprehensive, final line-by-line review."  Counterclaims

14   ¶32.  But those allegations—themselves unexplained—are simply another way of stating the

15   "belief" that "some consumers … are told that the expert cannot complete a review of every

16   line of the consumer's return."  *Id.*

17        Block next relies on a general disclaimer on the TurboTax website stating that "[t]ax

18   expert and CPA availability may be limited," and that "[s]ome tax topics or situations may not

19   be included as part of this service, which shall be determined in the tax expert's sole

20   discretion."  Counterclaims ¶33 & n.19.  According to Block, this disclaimer somehow renders

21   the challenged ad deceptive.  But Block alleges no facts to support this theory.  This disclaimer

22   only describes the truism that certain tax situations might fall outside of a tax expert's

23   qualifications or the tax-preparation product's coverage —for example, complex foreign-tax

24   questions—and does not render the challenged ad deceptive.  Block is familiar with this

25   concept—its own services agreement similarly disclaims that its online tax professionals

26   "reserve[] the right to refuse any request" for advice.  H&R Block, *Online Services Agreement*

27   at 6, https://www.hrblock.com/pdf/HRBlock-Online-Services-Agreement.pdf.

28

1      In short, the ads simply do not make the deceptive claims that Block alleges they do,

2  and no reasonable consumer could conclude otherwise.  Because "[n]o amendment … could

3  improve the plausibility of the consumer confusion allegations [Block] asserts," the Court

4  should dismiss Block's counterclaims with prejudice.  *Painter v. Blue Diamond Growers*, 757

5  F. App'x 517, 520 (9th Cir. 2018); *see also Rodriguez v. Newsom*, 2019 WL 11583464, at *4

6  (N.D. Cal. July 22, 2019) (dismissing claims with prejudice where they were "contradicted by

7  the exhibits to the complaint").

8      **B.**    **Block's Mistaken And Bad-Faith Reliance On Statements Made During**
            **This Proceeding**

9

10      As explained, Block's allegations concerning the four advertisements that Block

11  contends are false or misleading fail to state a claim.  That is enough to dismiss Block's

12  counterclaims.  But Block's allegations also address statements made outside of those ads (in

13  Ms. Berger's declaration and during the TRO hearing), apparently intended to leave the

14  impression with the Court or the public (or both) that Intuit has somehow misled the Court.

15  Because those allegations are both irrelevant and themselves false and misleading, they should

16  be stricken pursuant to Rule 12(f).  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a

17  pleading … any redundant, immaterial, impertinent, or scandalous matter.")

18      *First*, statements made during this proceeding are not actionable because the Lanham

19  Act only "proscribes misrepresentation of … goods or services in 'commercial advertising or

20  promotion'" "disseminated … to the … purchasing public" "for the purpose of influencing

21  consumers to buy defendant's goods or services."  *Coastal Abstract Serv., Inc. v. First Am.*

22  *Title Ins. Co.*, 173 F.3d 725, 734-735 (9th Cir. 1999).  "[S]tatements allegedly made to [a

23  court] do not constitute 'commercial advertising or promotion'" because they are "not made

24  for the purpose of influencing consumers to buy … goods or services but, rather, serve[] …

25  legal purposes."  *BPI Sports, LLC v. ThermoLife Int'l LLC*, 2020 WL 10180910, at *6 n.2

26  (S.D. Fla. Jan. 9, 2020).  Block therefore cannot state a claim under the Lanham Act by

27  pointing to statements made during this proceeding.  Ms. Berger's declaration and the TRO

28

-21-

1   hearing simply have "no essential or important relationship to the claim for relief," *JGX, Inc.*,

2   2018 WL 984856, at *6, i.e., those statements are irrelevant to whether the challenged

3   advertisements are false or misleading.

4        *Second*, Block repeatedly misrepresents what was said in Ms. Berger's declaration and

5   during the TRO hearing.  Through selective quoting and false accusations, Block argues that

6   Intuit's statements show that Intuit "intend[ed] to convey" both to the public and to this Court

7   that the expert final review occurs "automatically" and involves a line-by-line review of each

8   and every customer's return, without exception.  Counterclaims ¶¶20, 31.  Those allegations

9   are baseless, and the Court should also strike them for that reason.  *See* Fed. R. Civ. P. 12(f)

10  (providing that "impertinent" allegations may be stricken).

11       Starting with Ms. Berger's declaration, Block asserts that she made

12  "misrepresentations" about the expert final review being "automatic."  Counterclaims ¶20.

13  But her declaration did nothing of the sort; instead, it accurately described how the final

14  review works.  Even taking the counterclaims at face value, Block alleges only that Ms. Berger

15  stated that the "TurboTax Live Assisted product provides … a final review by a tax expert

16  before filing," and that, "[d]uring the final tax expert review provided in TurboTax Live

17  Assisted, customers are connected to a TurboTax expert for a final review of the customer's

18  tax return." *Id.*  Neither of those statements are false or misleading.  Intuit indisputably offers

19  as part of its TurboTax Live Assisted product a final expert review, during which customers

20  are connected to a TurboTax expert.  *Supra* p.4-5.  Block does not dispute those basic

21  propositions.

22       A complete review of Ms. Berger's declaration confirms that she made no

23  misrepresentations.  In the same paragraph that Block cites, the declaration states that

24  "[b]efore filing their tax return, customers using TurboTax Live Assisted ***can request*** that a

25  tax expert review their tax return and identify potential issues for further discussion."  Berger

26  Decl. ¶15 (emphasis added).  The declaration goes on to state that "[c]ustomers ***can*** also

27  receive a final line-by-line review of their return by the tax expert." *Id.* (emphasis added).  In

28

1    fact, Ms. Berger expressly contrasts the available expert final review feature with the

2    "*automated review* conducted on *every* tax return submitted by TurboTax." *Id.* ¶16 (emphasis

3    added).  Those representations are consistent with how Intuit has described the availability of

4    expert final review throughout this proceeding, and they are correct.  *See, e.g.*, Am. Compl.

5    ¶28 ("[C]ustomers using TurboTax Live Assisted *can* connect with a TurboTax tax expert for

6    a final line-by-line review[.]" (emphasis added)).

7         Block also distorts Ms. Berger's statements about whether the final expert review

8    always involves a line-by-line assessment.  Block selectively quotes Ms. Berger's declaration

9    to suggest that Ms. Berger misled the Court by stating that "'a final line-by-line review of [a

10   customer's] return by the tax expert,' 'costs nothing extra' and is a 'feature [that] comes

11   standard' in TT Live Assisted."  Counterclaims ¶31 (quoting Berger Decl. ¶15).  Again, Block

12   omits that Ms. Berger stated that "[c]ustomers **can** also receive a final line-by-line review of

13   their return by the tax expert."  Berger Decl. ¶15 (emphasis added).  Nowhere does Ms. Berger

14   state or imply that the expert final review "automatically" and in every circumstance includes

15   a line-by-line review, regardless of what the circumstance calls for.  And Ms. Berger's

16   statements that the expert final review "costs nothing extra" and is a "feature [that] comes

17   standard" with TurboTax Live Assisted is undeniably true.  Counterclaims ¶31 (quoting

18   Berger Decl. ¶15).  Block does not dispute that an expert final review comes standard with

19   TurboTax Live Assisted for no additional cost.

20        In fact, Block previously recognized that Ms. Berger did not represent that an expert

21   will necessarily conduct a line-by-line review of every return—directly contradicting its

22   current allegations.  In its TRO opposition brief, Block noted that "Intuit's company witness

23   … carefully avoids saying whether a TurboTax tax expert *will* review or *will* sign returns,"

24   quoting the same language addressed above and italicizing the "can request," "can also," and

25   "if" language.  Block TRO Opp. 9 n.2 (quoting Berger Decl. ¶15).  Block cannot claim now

26   that it was unaware of the very distinction it highlighted in its own papers.  And of course,

27

28

INTUIT INC.'S MOTION TO DISMISS
                                                                        AND MOTION TO STRIKE

1    Block's counsel did not suggest at any point during the TRO proceedings that Ms. Berger's

2    declaration was anything but accurate.

3        Block next accuses Intuit of "doubl[ing] down" on its supposed misrepresentations to

4    the Court during the TRO hearing.  Counterclaims ¶21.  Block cites the Court's statements

5    during the hearing to suggest that Intuit misled the Court or, at a minimum, failed to correct

6    the Court's misunderstanding.  Counterclaims ¶¶21-22.  But Block obscures that those

7    citations are from the Court's questioning of ***Block's* counsel, not Intuit's**.  Intuit's counsel

8    had no opportunity to interject, and in fact would not speak for almost twenty pages in the

9    transcript (roughly a quarter of the hearing by pages).  *Compare* TRO Hr'g Tr. 38:4-9, 42:3-9

10   (cited by Block), *with id.* at 56:5-12 (the next statements by Intuit's counsel).  Block also

11   omits that just moments after the questions Block quotes, Block's counsel stated "that is not

12   correct, your honor," *id.* at 38:14, and "that is what [Intuit] would like you to think," *id.* at

13   42:10-11.  Block's counsel then went on to state that "their product does not automatically

14   connect you with a live person." *Id.* at 42:22-23.  In response, the Court made clear that it

15   understood that "the customer is not having a conversation with the TurboTax Live expert

16   unless they want to," and that the customer would "have to follow up." *Id.* at 43:4-7.  Thus, by

17   the time Intuit's counsel spoke (still thirteen pages later at this point), there was no stated

18   misconception to correct. *See id.* at 56:5-12 (Intuit's counsel addressing the Court's question

19   concerning the value to consumers of the conceded differences between the products).

20       In sum, neither Ms. Berger nor Intuit's counsel made misrepresentations to the Court.

21   Block's allegations regarding Ms. Berger's declaration and Intuit's counsel's statements at the

22   hearing (contained in paragraphs 3, 20, 21, 22, and 31 of the counterclaims) should be

23   stricken.  *See JGX, Inc.*, 2018 WL 984856, at *6; *see also Garibaldi v. Bank of Am. Corp.*,

24   2014 WL 1338563, at *6 (N.D. Cal. Apr. 1, 2014) (striking paragraphs with legally meritless

25   allegations).  And Intuit respectfully submits that the Court may wish to consider their

26   inclusion in the counterclaims when considering whether to dismiss the claims with prejudice.

27   *See United States ex rel. Jones v. Sutter Health*, 2021 WL 3665939, at *9-10 (N.D. Cal. Aug.

28

-24-

1   18, 2021) (dismissal with prejudice was warranted in part because the plaintiff "may have

2   acted in bad faith"); *see also Indiezone, Inc. v. Rooke*, 2014 WL 4354122, at *4 (N.D. Cal.

3   Sept. 2, 2014) (dismissal with prejudice was warranted because the plaintiff submitted

4   misleading statements to the court), *aff'd*, 720 F. App'x 333 (9th Cir. 2017).

5         **C.    Block's State-Law Counterclaims Must Also Be Dismissed**

6         Block's state-law counterclaims fail for the same reasons as its Lanham Act claim.

7   The parties agree that Lanham Act, California, and Missouri deceptive-advertising claims are

8   governed by the same standards.  *See* Block TRO Opp. 16 ("[A]ll of these [Lanham Act and

9   state-law] claims are evaluated under the same Lanham Act Section 43(a) rubric."); TRO Mot.

10  19-20 (same).  Indeed, it is well-established that "[c]laims for false advertising and unfair

11  competition under California law are 'substantially congruent' to claims made under the

12  Lanham Act, and require the same proof."  *RingCentral, Inc. v. Nextiva, Inc.*, 2021 WL

13  2476879, at *3 (N.D. Cal. June 17, 2021).  Similarly, an "action under Missouri common law

14  for unfair competition utilizes the same elements as an action under the Lanham Act."  *SI03,*

15  *Inc. v. Musclegen Rsch., Inc.*, 2020 WL 2468412, at *2 n.3 (E.D. Mo. May 13, 2020).

16        Because Block's Lanham Act counterclaim must be dismissed for failing to state a

17  claim under Rule 12(b)(6), so too must Block's state-law counterclaims.

18                  **CONCLUSION**

19        The Court should grant Intuit's motions, dismiss Block's counterclaims with prejudice,

20  and strike Block's references to Ms. Berger's declaration and the TRO hearing.

21

22

23

24

25

26

27

28

Dated: April 19, 2024

Respectfully submitted,

*/s/  Sonal N. Mehta*

Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 230-6363
Derek.Woodman@wilmerhale.com

*Attorneys for Intuit Inc*