# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| INTUIT INC., <br><br> Plaintiff, <br><br> v. <br><br> HRB TAX GROUP, INC., et al., <br><br> Defendants. | Case No. 5:24-cv-00253-BLF <br><br> **ORDER GRANTING PLAINTIFF INTUIT INC.'S MOTION TO DISMISS HRB DIGITAL LLC'S COUNTERCLAIMS WITH LEAVE TO AMEND, AND GRANTING MOTION TO STRIKE** <br><br> [Re: ECF No. 64] |

Before the Court is Plaintiff Intuit Inc.'s ("Intuit") Motion to Dismiss HRB Digital LLC's Counterclaims, and Motion to Strike. ECF No. 64 ("Mot."). Defendant HRB Digital LLC ("Block") opposes the motions, ECF No. 67 ("Opp."), and Intuit filed a Reply in support of its motions, ECF No. 69 ("Reply"). The Court held a hearing on the motions on August 22, 2024. *See* ECF No. 109.

For the reasons stated below, the Court GRANTS Intuit's Motion to Dismiss HRB Digital LLC's Counterclaims with leave to amend, and GRANTS Intuit's Motion to Strike.

## I. BACKGROUND

The following are the facts as stated in Block's Counterclaims. For purposes of this motion, the Court accepts the well-pleaded facts in Block's Counterclaims as true. *See* ECF No. 50 ("Counterclaims").

### A. Intuit's Expert Final Review Advertising

Intuit offers a suite of online tax-preparation products and services under the "TurboTax" brand. *Id.* ¶¶ 7, 13. There are three tiers of TurboTax products, including "Do-It-Yourself," "Live Assisted," and "Live Full Service." *Id.* ¶ 13. Intuit advertising features an "expert final review"

component of the Live Assisted product, wherein a tax expert conducts a review of a customer's self-prepared return before it is filed. *Id.* ¶¶ 1–2, 14.

Block alleges that "Intuit's advertising communicates to consumers that TT Live Assisted includes an automatic, self-executing final review of their self-prepared tax return, without any need to ask questions or take any additional steps." *Id.* ¶ 15. In fact, expert final review is not entirely automatic; instead, after consumers complete the TurboTax process to fill out their Live Assisted tax forms, they are informed that a tax expert is available to answer questions for the consumer prior to filing. *See id.* ¶¶ 23–24. To initiate expert final review, the consumer must then elect to be "connected to an expert" and share the questions and concerns that they would like the expert to address. *Id.* ¶¶ 25–26. In other words, consumers generally must take "affirmative steps" to initiate an expert final review. *Id.* ¶ 24.

In addition, Block alleges that Intuit's advertising regarding expert final review suggests that a live tax expert will conduct a "comprehensive 'line-by-line' review of the consumer's return to ensure complete accuracy." *Id.* ¶ 29. But Intuit's Live Assisted product does not always include a complete review of every line on a consumer's tax return, and expert final review permits the reviewing tax expert discretion to omit review of a subset of topics or situations. *Id.* ¶¶ 32–33. To guarantee a comprehensive, line-by-line expert review, consumers may be required to upgrade their TurboTax service to the Full Service product. *Id.* ¶ 32.

**B. Procedural History**

On January 15, 2024, Intuit filed suit against H&R Block, Inc. ECF No. 1. Intuit also filed a Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 6, on which a hearing was set for January 22, 2024, ECF No. 14. On January 18, 2024, Intuit filed an Amended Complaint that added HRB Tax Group, Inc. and HRB Digital LLC as defendants. ECF No. 18. The Amended Complaint alleges causes of action under the Lanham Act, 15 U.S.C. § 1125(a), California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and Missouri Common Law related to advertising by H&R Block Inc. *Id.* ¶¶ 92–122.

Following the temporary restraining order ("TRO") hearing, the Court entered a Consent

Order in which Block represented to the Court that it "had voluntarily removed or modified" various statements that were the subject of the legal dispute between Block and Intuit. ECF No. 38. Block agreed not to "re-introduce the statements . . . absent changed circumstances or until such time as a hearing can be held on Plaintiff's request for a preliminary injunction." *Id.* at 1. The Court subsequently ordered a briefing schedule for the Parties' Cross-Motions for Preliminary Injunction, ECF No. 63, and set the hearing on the cross-motions for September 30, 2024, ECF No. 82.

Defendants amended their Answer to Intuit's Amended Complaint on March 15, 2024, adding HRB Digital LLC's Counterclaims against Intuit, which mirror the claims in Intuit's Amended Complaint. ECF No. 50. Now pending before the Court is Intuit's Motion to Dismiss HRB Digital LLC's Counterclaims, and Motion to Strike.

## II.  LEGAL STANDARD

### A. Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Since "[t]he party invoking federal jurisdiction bears the burden of establishing" the elements of Article III standing, a counterclaim plaintiff must be able to demonstrate regarding its counterclaims (1) an "injury in fact" that is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be "redressed by a favorable judicial decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

### B. Rule 12(b)(6)

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint."

3

*AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015).  Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.  However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

**C.  Rule 12(f)**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal citation omitted) (quoting 5

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

### D. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III. DISCUSSION

### A. Article III Standing

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to show constitutional standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, "allegations of direct competition, standing alone," are not enough to establish Article III standing on a false advertising claim. *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-CV-05638-BLF, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020). To adequately allege a competitive injury for the purpose of Article III standing, a party must show "injury resulting from the defendant's conduct," *Lujan*, 504 U.S. at 561—for example, at least two links in "a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Allbirds*, 2020 WL 6826487, at *4.

Intuit argues that Block has not sufficiently pleaded facts establishing Article III standing.

5

Mot. at 10.  Specifically, Intuit states that Block "alleges *no facts* concerning any injuries it sustained as a result of [Intuit's] allegedly deceptive advertising."  *Id.* (emphasis in original).  While Block states that it "has been and will continue to be damaged" by the allegedly false and misleading statements in Intuit's advertisements, Counterclaims ¶ 42, Intuit argues such statements are "conclusory" and "bald legal conclusions," Mot. at 10.

Block responds that it is a direct competitor with Intuit "in the market for tax preparation products and services 'such that sales gained by one [are] . . . likely to come at the other's expense.'"  Opp. at 20 (quoting *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 911 (N.D. Cal. 2021)).  Block further explains the "chain of inferences" that it believes establishes Article III standing in its Opposition brief, noting that "the comprehensiveness of a human expert review for a consumer's tax return is important to a consumer's decision when choosing between two tax preparation products," meaning that Intuit's advertising about its expert final review serves to "entice consumers to favor Intuit over Block."  Opp at 21.  Block goes on to seek leave to "augment the allegations of its Counterclaims," and attaches proposed Counterclaims as Exhibit A to the Opposition.  *Id.*; Opp. Ex. A.

The Court agrees with Intuit that Block's Counterclaims fall short in alleging Block's constitutional standing.  Block's obligation is to adequately plead Article III standing within the Counterclaims themselves; supplementing the facts therein with a chain of inferences described in a brief in opposition to a motion to dismiss is not enough.  Looking at the Counterclaims, Block alleges that "Intuit's false and misleading statements are duping consumers into believing they will automatically receive a material service," Counterclaims ¶ 34, but Block fails to connect that allegation to any harm it has experienced beyond the conclusory statement that "Block has been and will continue to be damaged" by Intuit's statements through "lost profits," *id.* ¶ 42.  Thus, Block's allegations are more similar to those found insufficient in *Allbirds* than those found sufficient in *Scilex*.  Like the allegations in *Allbirds*, Block's statements in the Counterclaims "only provide[] one link in th[e] chain of inferences," which is that Block and Intuit are competitors.  *Allbirds*, 2020 WL 6826487, at *4.  In contrast, the *Scilex* plaintiff alleged multiple links, including that the allegedly false advertising "deceived consumers into buying Defendants'

6

[products] instead of [Plaintiff's products]." *Scilex Pharms.*, 552 F. Supp. 3d at 911. To plead Article III standing, Block must allege facts supporting at least two links in the chain of inferences illustrating how Intuit's advertising conduct could harm Block.

Since Article III standing is a prerequisite to this Court's exercise of jurisdiction, the Court GRANTS Intuit's 12(b)(1) motion to dismiss. As will be discussed in section III.D, *infra*, this dismissal is with leave to amend.

### B.  12(b)(6) Motion to Dismiss

Because the Court finds that Block fails to allege Article III standing, it does not have subject matter jurisdiction to hear the case and need not address whether Block has adequately alleged its claims under the Lanham Act, UCL, FAL, or Missouri Common Law. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006) (explaining that the district court "erred by reaching the merits" where it lacked subject matter jurisdiction over the complaint). Likewise, the Court need not address the Parties' arguments regarding whether Block complied with Federal Rule of Civil Procedure 9(b).

As guidance to the Parties, however, the Court notes that, while it is true that that a court considering a motion to dismiss false advertising claims can "determine, as a matter of law" that the allegations "are simply not plausible," those situations are "rare." *Tobin v. Procter & Gamble Co.*, No. 23-CV-05061-JSW, 2024 WL 1560050, at *4 (N.D. Cal. Apr. 9, 2024). Generally, whether an advertisement is deceptive to a reasonable consumer is a question of fact that is poorly suited to resolution at the motion to dismiss stage. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). Still, under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), Block must plead its Counterclaims "with particularity." Fed. R. Civ. P. 9(b); *see Yelp, Inc. v. ReviewVio, Inc.*, No. C 23-06508 WHA, 2024 WL 2883668, at *2 (N.D. Cal. June 6, 2024) ("While the Ninth Circuit has not squarely decided that Rule 9(b) applies to Lanham Act claims, several of its district courts have reasoned that, 'where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable.'" (quoting *23andMe v. Ancestry.com*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018))).

7

1  Thus, Block must include "the who, what, when, where, and how of the misconduct charged."
2  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253-WHO, 2016 WL 6393503,
3  at *4 (N.D. Cal. Oct. 28, 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th
4  Cir. 2003)).

5  At this juncture, the Court is skeptical of Intuit's argument that Block's Counterclaims fail
6  to clear the "plausibility" bar with respect to the allegedly deceptive nature of Intuit's
7  advertisements. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.
8  1997) (discussing the elements of a Lanham Act false advertising claim, including a showing that
9  "the statement actually deceived or has the tendency to deceive a substantial segment of its
10 audience"). As one example, Block points to an ad that includes the following statement: "Finish
11 with an expert final review, done right, guaranteed." Counterclaims ¶ 17. Despite Intuit's
12 protestations that the ad does not "state or imply . . . that an expert review will happen
13 automatically," Mot. at 14, the Court would be hard-pressed to find that the non-automatic nature
14 of the expert final review is so obvious from this advertisement that Block's Counterclaims fall
15 into that rare category where the allegations of false advertising are "simply not plausible." *Tobin*,
16 2024 WL 1560050, at *4. This is true even considering the full context of the quoted
17 advertisement. *See LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-CV-02573-
18 YGR, 2019 WL 160335, at *3 (N.D. Cal. Jan. 10, 2019).

19 On the other hand, Block is required to allege materiality, "in that [the allegedly false
20 statement] is likely to influence the purchasing decision" of a reasonable consumer. *Southland
21 Sod*, 108 F.3d at 1139. "Materiality 'is "typically" proven through consumer surveys,'" but "[a]
22 plaintiff can also establish materiality by showing that 'the defendants misrepresented an inherent
23 quality or characteristic of the product.'" *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp.
24 3d 623, 644 (N.D. Cal. 2019) (citation omitted). In its Counterclaims, Block states that "Intuit's
25 false and misleading statements are material because they are likely to influence consumer
26 purchasing decisions." Counterclaims ¶ 40. But this statement seems simply to regurgitate the
27 legal standard for materiality under the Lanham Act, and "[t]hreadbare recitals of the elements of a
28 cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Again, the Court does not decide the questions of the Counterclaims' sufficiency under Federal Rules of Civil Procedure 12(b)(6) or 9(b), but rather provides the foregoing observations as guidance.

### C. 12(f) Motion to Strike

In addition to moving for 12(b)(1) and 12(b)(6) dismissal, Intuit also moves to strike allegations from Block's Counterclaims pursuant to Federal Rule of Civil Procedure 12(f). Intuit targets Block's allegations regarding statements made by Elizabeth Berger in her Declaration in Support of Intuit's Motion for a Temporary Restraining Order and Preliminary Injunction ("Berger Declaration"), ECF No. 6-2, as well as statements made during the January 22, 2024, hearing on Intuit's motion for a temporary restraining order ("TRO Hearing"). Mot. at 21–25.

In the former category, Block's Counterclaims state that Ms. Berger's declaration is "misleading" because it says that "a final line-by-line review of [a customer's] return by the tax expert" is available at no extra cost and is a standard feature of Intuit's Live Assisted product, when a final line-by-line review "is *not* an automatic standard feature included with TT Live Assisted." Counterclaims ¶¶ 31–32 (emphasis and alteration in original). In its motion to strike, Intuit argues that Ms. Berger's declaration accurately portrays that the "expert final review" feature is available, although not automatic, and that it may not always involve a thorough, line-by-line review of the entire return. Mot. at 22–23.

Regarding the latter category, Block's Counterclaims cite to this Court's statements at the TRO Hearing, which occurred during oral argument by Block's counsel. *See* Counterclaims ¶¶ 21–22. Intuit points out that its own counsel was not invited by the Court to speak again until nearly twenty transcript pages later, at which point the Court's misstatement of Intuit's expert final review feature had already been corrected. Mot. at 24; *compare* ECF No. 36 at 38:5–14 ("[The Court:] . . . You are comparing a product by TurboTax that has a guaranteed final human expert review of every tax return, to your product . . . . Mr. Barker: And that's not correct, Your Honor."), *with id.* at 55:23 ("[The Court:] We will return to [Intuit's counsel] Ms. Mehta . . ."). 

Block responds that both categories of statement "support Block's allegations that Intuit's advertisements are, in fact, misleading," Opp. at 19, and "they are evidence of Intuit's intent to

9

convey a misleading message," *id.* at 20.  But at the August 22, 2024, hearing on Intuit's motion to dismiss, Block's counsel clarified that Block does not intend to make the Court a witness at trial regarding the alleged misleading nature of Intuit's advertisements.  ECF No. 112 at 5:6–10.  The allegations about the Court's statements at the TRO Hearing are therefore "statements that do not pertain, and are not necessary, to the issues in question" in the Counterclaims.  *Fantasy*, 984 F.2d at 1527.  In addition, the allegations about statements in the Berger Declaration bear "no essential or important relationship to the claim for relief," *id.*, because they are not relevant to the issues of whether the advertisements in question contain false statements or are likely to mislead consumers.  Intuit's motion to strike is GRANTED.

### D.  Leave to Amend

The legal presumption is in favor of granting leave to amend, as the Federal Rules instruct that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has explained that "[t]his policy is to be applied with extreme liberality."  *Eminence Capital*, 316 F.3d at 1051 (citations and internal quotations omitted).  As a result, leave to amend should be granted "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors": undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendment, and futility of amendment.  *Id.* at 1052.

No such showing exists here.  As an initial matter, the Court disagrees with Intuit's argument that "amendment would be futile" in this case.  Reply at 14.  While receptive to Intuit's point that Block's attached Exhibit of its proposed Amended Counterclaims may also be deficient, the Court finds that Block could conceivably put forth factual allegations that establish Article III standing and that state claims capable of surviving a 12(b)(6) motion.  Intuit's arguments as to bad faith, undue delay, and prejudice, *id.* at 14–15, are similarly unpersuasive, with one notable exception: permitting Block to retain the September 30, 2024, date for a hearing on its Motion for Preliminary Injunction would prejudice Intuit's ability to respond to Block's Amended Counterclaims through its briefing.  The Court therefore VACATES the September 30, 2024, hearing on Block's Motion for Preliminary Injunction without prejudice to Block seeking a new hearing date for such motion once its Amended Counterclaims have been filed.

Having done so, and given Intuit's counsel's representation at the August 22, 2024, hearing that Intuit did not further object to Block including the fifth advertisement in its Amended Counterclaims, *see* ECF No. 112 at 35:5–13, the Court finds that Intuit will not be prejudiced by Block's forthcoming Amended Counterclaims. Block's Counterclaims are DISMISSED WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Intuit Inc.'s Motion to Dismiss HRB Digital LLC's Counterclaims is GRANTED. HRB Digital LLC's Counterclaims against Intuit Inc. are DISMISSED WITH LEAVE TO AMEND for failure to allege sufficient facts to show Article III standing.
2. Intuit Inc.'s Motion to Strike is GRANTED.
3. HRB Digital LLC may file amended counterclaims by September 9, 2024.

**IT IS SO ORDERED.**

Dated: September 5, 2024

_____
BETH LABSON FREEMAN
United States District Judge

11