Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 230-6363
Derek.Woodman@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

*Attorneys for Plaintiff and Counterclaim-Defendant Intuit Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| INTUIT INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>HRB TAX GROUP, INC. and HRB DIGITAL LLC,<br><br>        Defendants.<br>------------------------------------------------<br>HRB DIGITAL LLC,<br><br>        Counterclaim-Plaintiff,<br><br>vs.<br><br>INTUIT INC.,<br><br>        Counterclaim-Defendant. | Case No. 5:24-CV-00253-BLF<br><br>**DECLARATION IN SUPPORT OF INTUIT INC.'S ADMINISTRATIVE MOTION TO SEAL** |

I, Elizabeth Berger, declare:

1. Since June 2024, I have served as Director of Marketing Strategy at Intuit. From July 2021 to June 2024, I served as Intuit's Director of Customer and Business Strategy. From 2018 to 2021, I served as the Group Marketing Manager for Marketing Strategy at Intuit. From 2012 to 2018, I served as Intuit's Group Manager for Digital Marketing. From 2010 to 2012, I was a Senior Marketing Manager at Intuit. And from 2006 to 2010, I was a Marketing Manager at Intuit.

2. I submit this declaration in support of Intuit Inc.'s Administrative Motion to Seal. I have personal knowledge of the facts set forth in this declaration, and if called to testify as a witness, could and would do so competently.

3. Intuit requests that portions of the transcripts of the preliminary injunction hearing on September 30 and October 1, 2024, be kept under seal. The portions sought to be sealed reflect internal tax expert training materials, tax expert tools, and business metrics and data that Intuit treats as proprietary and confidential.

4. As explained in more detail below, disclosing the confidential information contained in the transcripts sought to be sealed would allow Intuit's competitors to learn and replicate Intuit's proprietary business methods for their own use and leverage Intuit's extensive training materials, which were created at significant expense to Intuit. The portions would also allow Intuit's competitors to gain key insight into Intuit's internal data. Because the online tax preparation industry is extremely competitive, Intuit's competitors would likely exploit this information for their own gain. The public disclosure of this information thus would substantially prejudice Intuit by causing the company competitive harm.

5. Intuit Exhibits 8, 17, 71, and 78, Block Exhibit 18, and portions of the hearing transcripts, contain or reflect confidential and proprietary information concerning Intuit's expert training materials and tools available to experts to serve TurboTax customers:

-1-

5:24-CV-253-BLF         DECLARATION IN SUPPORT OF INTUIT'S
                        ADMINISTRATIVE MOTION TO SEAL

i. <u>Expert Training Materials</u>. The expert final review feature provided in TurboTax Live Assisted sets TurboTax's assisted tax-preparation offering apart from its competitors. Intuit's internal help and training materials reveal how Intuit trains and instructs its tax experts to provide a final review. This information is not widely known in the industry, nor are the training materials shared with Intuit's customers or others outside of Intuit. To the contrary, Intuit has limited the circulation of these materials to its tax experts who rely on them when assisting TurboTax customers and clearly marks them as for "Internal Use Only" to prevent their distribution outside the organization. Intuit has invested millions of dollars, and thousands of employee and expert hours, into developing and providing a final review to consumers. As part of those efforts, Intuit has invested substantial resources into developing its expert final review training materials. If publicly released, competitors could use the information from training materials to train their own tax experts on how to conduct final reviews, without requiring the substantial investment that would otherwise be needed for their development, with the benefit of Intuit's knowledge based on years of experience and investment. Competitors with access to this confidential information would also be able to duplicate or undercut the services offered by TurboTax, harming Intuit's competitive position in the market. The public disclosure of the training materials would thus harm Intuit competitively.

ii. <u>Expert Guidance</u>. Internal Intuit guidance and business strategy concerning how TurboTax tax experts should serve customers during expert contacts, including an expert final review. Block Exhibit 18 also contains responses to potential questions from tax experts, reflecting and explaining Intuit's business strategy, Intuit's instructions to and training for its experts to provide expert assistance to TurboTax customers, and Intuit's interpretation of regulatory requirements. This information is proprietary and confidential: like the training materials, it reveals how tax experts are instructed to provide help and conduct a final review of consumer tax returns. Moreover, Block Exhibit 18 contains Intuit's guidance on the proper interpretation of regulatory requirements, which have not been shared outside of Intuit. Were the document, and

-2-

information from the document in the hearing transcripts, publicly disclosed, competitors could use the document to leverage Intuit's guidance and training for tax experts to their own benefit and to Intuit's detriment.

  iii. <u>TurboTax Expert Tools</u>.  The tools that TurboTax experts have available to them are not publicly known, and Intuit treats them as confidential and proprietary. Those tools were developed at significant expense to Intuit and are what allow our experts to provide a competitively distinct TurboTax service.  If publicly released, Intuit's competitors could re-create the tools and/or the expert final review experience to their own competitive advantage, and to Intuit's detriment.

6. Intuit Exhibit 12 and portions of the hearing transcripts contain or reference proprietary and confidential business metrics and data:

  i. <u>TurboTax Consumer Metrics</u>.  The TurboTax data discussed in the transcript includes (a) the rates at which consumers choose to purchase TurboTax products (referred to as the conversion rate); (b) the total number of customers who filed their tax return with Live Assisted; (c) Live Assisted customers who filed after having any contact with a TurboTax tax expert; (d) Live Assisted customers who filed after receiving an expert final review; and (e) the number of consumers who upgraded to Full Service after connecting with an expert for a final review.  This internal data provides important business insights into TurboTax's performance in the assisted tax-preparation space and reveals consumer preferences and conduct within the assisted online tax-preparation product space.  Intuit treats this information as confidential and proprietary, using it to inform its business strategy, investments, and priorities.  Such information about TurboTax's performance and consumer preferences is thus highly valuable to Intuit—and, for the same reasons, Intuit's competitors.  Publicly releasing this information would allow Intuit's competitors to use this sensitive business data for their own competitive advantage, to the detriment of Intuit.

  ii. <u>Transactional Net Promoter Scores (tNPS)</u>.  tNPS track customer satisfaction by showing how likely TurboTax consumers are to recommend an experience

based on surveys conducted shortly after that experience. Intuit collects tNPS on key products and product features, providing Intuit with critical information about consumer preferences. That information informs Intuit's business strategies, including strategic investments and business priorities. Intuit treats this information as confidential and proprietary to further Intuit's business and strategic goals. Publicly releasing this data would provide competitors with highly valuable insights into TurboTax consumer behavior and preferences.

iii.  Price Testing. The transcript discusses Intuit's methods for testing prices and potential strategies concerning the pricing for TurboTax products, both of which are kept confidential. While price testing as a general matter is common in the industry, Intuit's specific practices and strategies are not publicly known. If publicly released, Intuit's competitors could use that information to learn more about Intuit's pricing strategies and inform their own business strategies, to Intuit's detriment.

7.  The requested relief is narrowly tailored to protect Intuit's confidential information.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 15, 2024, in San Diego, California.

_____
Elizabeth Berger