Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 230-6363
Derek.Woodman@wilmerhale.com
*Attorneys for Plaintiff and
Counterclaim-Defendant Intuit Inc.*

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| INTUIT INC.,<br><br>            Plaintiff,<br><br>   vs.<br><br>HRB TAX GROUP, INC.<br>and HRB DIGITAL LLC,<br><br>            Defendants.<br><br>   and<br><br>HRB DIGITAL LLC,<br><br>            Counterclaim-Plaintiff,<br><br>   vs.<br><br>INTUIT INC.,<br><br>            Counterclaim-Defendant. | **Case No. 5:24-cv-00253-BLF**<br><br>**INTUIT INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS HRB DIGITAL LLC's FIRST AMENDED COUNTERCLAIMS**<br><br>Hearing Date:  February 27, 2025<br>Time:  9:00 a.m.<br><br>Judge: Hon. Beth Labson Freeman |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................3

I.    Block Is Wrong That This Court Should Disregard Incorporated And Judicially Noticeable Material..............................................................................................3

II.   Block's Arguments Cannot Cure Its Failure To Plead Article III Standing ....................6

III.  Block Fails To Plead Plausible Deceptive-Advertising Claims .........................................9

      A.    The Record, Properly Considered, Demonstrates That Block's Claims Are Barred By Laches And Statutes Of Limitations ....................................................9

      B.    Block Fails To Resuscitate Its Deficient Materiality Allegations .......................11

      C.    Block Cannot Avoid Its Own Admissions Recognizing What Is Clear From The Face Of The Ads—The Ads Are Not False Or Misleading..............................13

IV.   Block's State-Law Counterclaims Fail For The Same Reasons As Its Lanham Act Counterclaim..................................................................................................15

CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allbirds, Inc. v. Giesswein Walkwaren AG*,
  2020 WL 6826487 (N.D Cal. June 4, 2020) ...........................................................8

*Bittner v. United States*,
  598 U.S. 85 (2023) .....................................................................................................15

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  475 F. App'x 113 (9th Cir. 2012) ...........................................................................14

*Clorox Co. v. Reckitt Benckiser Grp. PLC* ,
  398 F.Supp.3d 623 (N.D. Cal. 2019) ......................................................................14

*Estate of Blue v. Cnty. Of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) ...................................................................................10

*In re Finjan Holdings*,
  58 F.4th 1048 (9th Cir. 2023) ...................................................................................3

*Heartland Payments Sys., Inc. v. Mercury Payments Sys., LLC*,
  2016 WL 304764 (N.D. Cal. Jan. 26, 2016) ...........................................................14

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2015 WL 13310465 (C.D. Cal. Jan. 22, 2015), *aff'd*, 677 F. App'x 336 (9th Cir. 2017) .......5

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ..........................................................................9, 10, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...........................................................................3, 4, 5

*Kyocera Corp. v. Hecmma Inc.*,
  2006 WL 8455447 (S.D. Cal. Mar. 17, 2006) ..........................................................6

*McKenna v. WhisperText*,
  2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ...................................................14, 15

*Morales v. City & Cnty. of San Francisco*,
  603 F.Supp.3d 841 (N.D. Cal. 2022) ......................................................................15

*Otay River Constructors v. Zurch Am. Ins. Co.*,
  2009 WL 10672253 (S.D. Cal. July 16, 2009) ........................................................6

*Reveal Chat Holdco, LLC v. Facebook, Inc.,*
    471 F. Supp. 3d 981 (N.D. Cal. 2020) ...................................................................3, 9, 10, 11

*Ste. Genevieve Cnty. Levee Dist. #2 v. Luhr Bros.,*
    288 S.W.3d 779 (Mo. Ct. App. 2009) ...................................................................................10

## FEDERAL RULES

Fed. R. Civ. P.

8(e)(2) ...................................................................................................................................6

9(b) .......................................................................................................................................4

12(b)(6) ...............................................................................................................................15

30(b)(6) .................................................................................................................................5

1

## INTRODUCTION

2    Block's allegations fail to plead injury or plausible deceptive-advertising claims, and

3    Block's opposition does not save its amended counterclaims from dismissal.  As Intuit

4    explained in its second motion to dismiss, Block's third bite at the apple—offered with the

5    benefit of extensive discovery normally unavailable at this stage of the litigation, and with

6    direct guidance from the Court in both a written order and statements at a motion to dismiss

7    hearing—does not cure the numerous deficiencies identified in Block's initial counterclaims.

8    And just as the conclusory allegations in the counterclaims are insufficient to satisfy Block's

9    pleading obligations, Block's conclusory and unsupported opposition arguments are not

10   enough to survive a motion to dismiss.  This time, dismissal should be with prejudice.

11   *First*, Block's attempt to deflect from the counterclaims' deficiencies by focusing on

12   Intuit's supposedly inappropriate reliance on "extrinsic evidence" should be rejected.  For

13   starters, the counterclaims should be dismissed even without considering these materials—

14   Block's amended counterclaims on their face fail to allege sufficient facts to establish Block's

15   standing and that the challenged ads were material or false.  In any event, what Block

16   dismisses as "extrinsic evidence" is in fact material incorporated into the counterclaims by

17   reference, judicially noticeable material, and Block's own judicial admissions.  Those

18   materials, including Block's sworn statements to this Court, may reflect inconvenient truths

19   for Block, but they are properly part of the motion to dismiss record and should be considered.

20   That Block resorts to asking the Court to disregard Block's own representations made under

21   oath and under a duty of candor to the tribunal speaks volumes about the veracity of its

22   allegations.

23   *Second*, Block's opposition fails to identify the factual allegations necessary to

24   establish that Block has been harmed by the allegedly deceptive messages and that it thus has

25   standing.  Contrary to what Block now asserts, Block in fact continues to allege only that the

26   "'expert final review' is an important factor that influences consumer purchasing decisions," a

27   theory of standing that this Court already warned would result in Block "los[ing] the next

28   round of [a] motion to dismiss."

*Third*, Block's opposition fails to explain why its counterclaims are not barred by laches.  Block is wrong to argue that the Court cannot consider judicially noticeable material when considering Intuit's laches argument.  And Block does not dispute that Intuit has run substantially the same advertising claims since at least 2019, that Block was or at least should have been aware of those advertising claims, and that Intuit was prejudiced by Block's delay in bringing its claims.  Instead, Block argues only that its claims are not barred because Intuit's supposed violations are ongoing.  That argument reflects a fundamental misunderstanding of how laches works and how the doctrine is applied.

*Fourth*, Block's opposition confirms that Block's materiality allegations are deficient.  Rather than pointing to allegations showing that consumers' purchasing decisions were impacted by the delta between what the challenged ads purportedly promised and what consumers received, Block argues that it does not need to offer those allegations.  That is wrong as a matter of law.  As the Court explained, Block "need[ed] to focus [its] allegations of materiality to the claims [it is] making against Intuit," which is "whether [the expert final review is] automatic or not and whether it's line-by-line or not in all instances."  MTD Hr'g Tr. at 25:22-26:2.  Block's allegations that consumers generally care about receiving an expert final review are therefore insufficient to establish materiality as to Block's actual claims.  Block can no longer even credibly make that irrelevant argument since it has argued to this Court—with success for the time being—that the expert final review is immaterial.

*Fifth*, Block fails to save its facially implausible falsity allegations.  The ads on their face do not convey the messages that Block asserts, and it is implausible for Block to allege otherwise.  The Court is not required to set aside its common sense when considering those allegations.  And while the content of the ads alone is enough to reject Block's counterclaims, Block's repeated sworn statements that Intuit's ads conveyed only that a "tax expert will talk to you about your specific questions or concerns" and that consumers "*can request* a 'final review' from a tax expert"—directly contradicting Block's interpretation of the ads in the amended counterclaims—confirm that the allegations are implausible.  These are not alternative theories of liability, as Block remarkably asserts, they are factual allegations that

-2-

INTUIT INC.'S REPLY ISO MTD

1  directly contradict sworn testimony by Block and its senior employees before this very Court.

2  Those judicial admissions provide further support for dismissal.

3  The amended counterclaims should be dismissed with prejudice.

4  **ARGUMENT**

5  **I.   BLOCK IS WRONG THAT THIS COURT SHOULD DISREGARD INCORPORATED AND JUDICIALLY NOTICEABLE MATERIAL**

6  

7  Intuit's motion to dismiss identifies facial deficiencies in Block's counterclaims,

8  meaning that the counterclaims should be dismissed even without considering materials

9  beyond the allegations themselves.  *See* Mot. 10-13 (standing), 16-17 (materiality), 18-21

10  (falsity).  Additionally, Intuit's motion referenced (1) materials that were incorporated by

11  reference into Block's counterclaims, *id.* at 6; (2) judicially noticeable public documents, *id.*

12  at 15; (3) Block's judicial admissions in this case, *id.* at 18-19; and (4) record evidence

13  confirming that Block cannot cure its counterclaim's deficiencies even if given a fourth

14  chance, *id.* at 20-21.  As explained in Intuit's motion, those materials are properly before the

15  Court, reinforce the facial deficiencies in Block's materiality and falsity allegations, and

16  establish that Block's claims are barred by laches.  Even on a motion to dismiss, nothing

17  requires a court to accept allegations that "contradict[] specific facts retold in a document ...

18  incorporated by reference in the complaint, or subject to judicial notice."  *In re Finjan*

19  *Holdings*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023); *see also Reveal Chat Holdco, LLC v.*

20  *Facebook, Inc.*, 471 F. Supp. 3d 981, 989 (N.D. Cal. 2020).

21  Block erroneously relies on *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th

22  Cir. 2018), to argue that Intuit's supposedly "voluminous evidence" "should not be considered

23  to assess the adequacy of Block's Amended Counterclaims."  Opp. 11.  Block overreads *Khoja*

24  to articulate a rule that simply does not exist.  At bottom, *Khoja* merely reaffirmed and

25  clarified the motion to dismiss standards for incorporation by reference and judicial notice.

26  *See* 899 F.3d at 999 ("[W]e aim here to clarify when it is proper to take judicial notice of facts

27  in documents, or to incorporate by reference documents into a complaint, and when it is not.").

28  To the extent Block is trying to use the policy concerns articulated in *Khoja* to invent

1    some unstated rule against using extrinsic evidence, that is wrong both as a matter of law and

2    as a matter of policy. *Khoja* expressed concern about the risk of "premature dismissals [of

3    claims] … that may turn out to be valid after discovery," which "is especially significant in

4    SEC fraud matters where there is already a heightened pleading standard [under Rule 9(b) and

5    the Private Securities Litigation Reform Act], and the defendants possess materials to which

6    the plaintiffs do not yet have access." 899 F.3d at 998-999. Where defendants have unequal

7    access to materials that they rely on to support dismissal, it "becomes near impossible for even

8    the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id*. at

9    999.

10           Those same concerns are not present here. This is not a securities fraud case. And

11   Intuit has not attached "materials to which [Block] do[es] not yet have access." *Khoja*, 899

12   F.3d at 998. All "extrinsic evidence" here is either public or material to which Block already

13   had access through the extensive discovery it obtained before the Court granted Intuit's motion

14   to dismiss. Nor is this a case where extrinsic evidence may unfairly undermine claims which

15   "may turn out to be valid after discovery," *id*. at 998-999, because, again, Block already had

16   the benefit of months of discovery (including numerous depositions) on the merits of its

17   claims. Thus, unlike in *Khoja*, Block has had access to all the materials cited and has had

18   months to discover additional facts to support its attempt to plausibly state a claim. That

19   Block seeks to artificially constrict the motion to dismiss record and avoid engaging with those

20   extrinsic materials speaks volumes about the strength of its counterclaims.

21           Rhetoric aside, Block does not actually dispute that many of the cited materials are

22   incorporated by reference or judicially noticeable under the standards articulated in *Khoja*.

23   For instance, Block does not dispute that the two TurboTax expert training materials and

24   TurboTax Live Assisted product screens are incorporated by reference into the amended

25   counterclaims, which show that there is little difference between what consumers were

26   allegedly promised and what they actually received. Mot. 6. Nor does Block contest that the

27   Court can take judicial notice of TurboTax ads and Block webpages from 2019 and 2020,

28   which show Block's claims are untimely. *Id.* at 8-9.

-4-

1    Block does argue that five other documents should not be considered, but is wrong on

2    all fronts.  Block incorrectly asserts that *Khoja* precludes judicial notice of a 2019 Block

3    earnings call transcript (Ex. I at 15) stating that Block monitors competition because "the

4    transcript is subject to varying interpretations" and "it is unclear based on these statements

5    whether this 'awareness' extends to the specifics of each competitor's product offerings."

6    Opp. 11.  But in *Khoja*, the court acknowledged that transcripts of investor calls were properly

7    subject to judicial notice.  The court only declined to take judicial notice of a particular

8    statement because "[r]easonable people could debate what exactly this conference call

9    disclosed about [a relevant study]," given that the defendant's statements simultaneously

10   suggested that the study was terminated and ongoing.  899 F.3d. at 1000.  Block offers no

11   explanation for how the statements Intuit cites from Block's earnings call transcript are

12   similarly open to dueling interpretations, and they plainly are not.  Block's CEO

13   unambiguously stated that Block "pay[s] attention to competition" and is "aware of [its]

14   competitors," Ex. I at 15—Block does not dispute the accuracy of those statements.  The Court

15   should therefore consider those statements (along with other materials and common sense) to

16   find that Block should have been aware of Intuit's products and earlier expert final review ads.

17   Block is also wrong that the Court should ignore four other documents—(1) the

18   preliminary injunction hearing transcript, (2) Ms. Watts's declaration, (3) Ms. Watts's Rule

19   30(b)(6) deposition transcript, and (4) Block's closing argument slide.  Opp. 10, 19-20.  Block

20   first asks the Court to ignore those materials because they are not incorporated by reference or

21   judicially noticeable (Opp. 10)—but that is not Intuit's argument.  Instead, the materials are all

22   factual statements made under oath to the Court during this proceeding, and thus are properly

23   deemed judicial admissions.  Mot. 18-19.  Indeed, Block does not dispute that it or its senior

24   employees made those sworn statements; that such statements can be judicial admissions; or

25   that judicial admissions are binding on Block at the motion to dismiss stage, *see Hornberger v.*

26   *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2015 WL 13310465, at *3 (C.D. Cal. Jan. 22,

27   2015) ("As judicial admissions these facts are conclusively binding upon the Plaintiff and may

28   be considered in a motion to dismiss."), *aff'd*, 677 F. App'x 336 (9th Cir. 2017).

-5-

1    Block's response to Intuit's actual argument is that the statements are not "binding"

2  because they are not "'unequivocal'" enough as they do not reflect "Block's entire

3  understanding of Intuit's advertising and marketing of its 'expert final review.'" Opp. 19-20

4  (quoting *Otay River Constructors v. Zurch Am. Ins. Co.*, 2009 WL 10672253, at *3 (S.D. Cal.

5  July 16, 2009)).  Block offers no support for its made up standard that judicial admissions are

6  only binding if they reflect a party's "entire understanding" about a topic.  *Otay*, the only case

7  Block cites, requires only that a statement be "unequivocal," not that it reflect a party's "entire

8  understanding."  2009 WL 10672253, at *3.  Block's judicial admissions satisfy that standard:

9  Block unequivocally stated that Intuit's ads tell consumers that during a final review a "tax

10  expert will talk to you about your specific questions or concerns" and that consumers must

11  "request[] such a review."  And as for the accuracy of those statements, Block does not

12  contend that any of those statements are incorrect or offer to withdraw or correct them.  Nor

13  did Block contemporaneously tell the Court that they did not reflect its "entire understanding."

14  The Court should reject Block's invitation to ignore its contradictory sworn testimony.

15    Block is also wrong that it "is of no consequence" "that Block has taken inconsistent

16  positions" (Opp. 22).  Block's sole authority for that assertion, *Kyocera Corp. v. Hecmma Inc.*,

17  2006 WL 8455447, at *2 (S.D. Cal. Mar. 17, 2006), is inapposite.  *Kyocera* permitted the

18  plaintiffs to state alternative claims for relief under Rule 8(e)(2):  plaintiffs in that case stated a

19  breach of contract claim and an unjust enrichment claim, even though the latter assumes there

20  was no express contract and is inconsistent with the former.  *Kyocera*, 2006 WL 8455447, at

21  *2.  That is not the situation here.  Block does not state alternative claims for relief, but rather

22  offers allegations that directly and repeatedly contradict its sworn statements to the Court.  No

23  doctrine or Rule permits that.  That Block must repeatedly disavow what it previously told the

24  Court under oath lays bare just how implausible its allegations really are.

25  **II.    BLOCK'S ARGUMENTS CANNOT CURE ITS FAILURE TO PLEAD ARTICLE III STANDING**

26    Block argues that its amended counterclaims now provide the missing second link in

27  the chain of inferences needed to establish harm to Block from the deception alleged and thus

28  its standing.  Opp. 12-13.  But on their face the amended counterclaims do no such thing.

1    *First*, Block's opposition argues, through the creative use of brackets, that it has now

2    alleged "that the [automatic and comprehensive features are] … important factor[s] for

3    consumers in deciding which [online tax preparation product] to buy such that [Intuit] captures

4    a larger share of the [online tax-preparation] market because of its alleged false or misleading

5    advertising."  Opp. 12-13 (Block's alterations).  But that is not what Block actually alleged.

6    What Block actually pleads is that the "'expert final review' is an important factor that

7    influences consumer purchasing decisions such that Intuit captures a larger share of the tax

8    preparation market because of its false and misleading advertising."  Am. Counterclaims ¶71.

9    The Court already warned that Block would "lose the next round of [a] motion to dismiss if

10   [it] blurs [the] distinctions" between "whether the opportunity to have the final review is

11   important" and whether "the point that you find to be misleading" is important, namely,

12   "whether it's automatic or not and whether it's line-by-line or not in all instances."  MTD Hr'g

13   Tr. 25:21-26:5; MTD Order 6-7.  And as the Court also already explained: "Block's obligation

14   is to adequately plead Article III standing within the Counterclaims themselves;

15   supplementing the facts therein with a chain of inferences described in a brief in opposition to

16   a motion to dismiss is not enough."  MTD Order 6.  That Block's rejoinder to Intuit's

17   arguments is to misstate what is actually alleged underscores the pleadings' deficiencies.

18   *Second*, Block contends that paragraphs 8, 65-67, 69-70, and 72 of the amended

19   counterclaims offer the facts needed to establish that it was harmed by the deception alleged.

20   Opp. 12-13.  Yet again, Block does not fairly represent its actual allegations.  The paragraphs

21   on which Block relies allege only (1) that Block is a direct competitor of Intuit, Am.

22   Counterclaims ¶¶8, 65, and that "consumers and sales gained by Intuit are likely to detract

23   from Block," *id.* ¶¶8, 65-66, 69, 72; (2) that "Intuit's false and misleading advertisements lure

24   consumers … into choosing Intuit's online tax preparation products over Block's products

25   because consumers mistakenly believe their purchase of Intuit's product includes an

26   automatic, line-by-line expert final review," *id.* ¶¶8, 66, 70; and (3) that this supposed

27   deception is "causing a competitive and financial injury to Block" because consumers "would

28   likely decide to purchase" Block's products but for Intuit's ads, *id.* ¶¶8, 67.

-7-

1    The Court already deemed the first set of allegations insufficient to establish standing.

2    MTD Order 6-7; MTD Hr'g Tr. 25:21-26:5.  The remaining conclusory "contention[s]" do not

3    contain the "facts" necessary to plead standing to survive a motion to dismiss.  *Allbirds, Inc. v.*

4    *Giesswein Walkwaren AG*, 2020 WL 6826487, at *4 (N.D Cal. June 4, 2020).  Indeed, they

5    contain no facts at all.  Just as the unsupported assertion in *Allbirds* that "customers prefer all

6    natural products" did not support an inference that Allbirds drew sales away from Giesswein,

7    *id.*, Block fails to allege any facts showing that consumers actually care about the difference

8    between what Intuit purportedly advertises (expert reviews that are "automatic" and always

9    "line by line") and what it delivers (am automatic prompt to receive a final review that is as

10   comprehensive as the customer wants or needs) such that their purchasing decisions would be

11   impacted—let alone that they would go to Block but for these supposed misrepresentations.

12   Block's conclusory assertions of harm and that consumers would otherwise choose Block's

13   products are nothing more than a repackaging of its prior deficient allegations, which the

14   Court rejected as a "conclusory statement that 'Block has been and will continue to be

15   damaged' by Intuit's statements through 'lost profits.'"  MTD Order 6.

16       Moreover, even if Block's conclusory allegations that consumers would choose to

17   purchase Block's products but for the deceptive ads were legally sufficient to establish harm to

18   Block, they should be disregarded as implausible.  As Intuit explained (and Block ignores),

19   Mot. 12-13, Block's assertion that consumers would purchase Block's products but for the ads

20   is nonsensical because Block's products offer no free final review at all, Am. Counterclaims

21   ¶8.  Block's bald assertion that consumers would choose Block over TurboTax but for the

22   purportedly deceptive ads is also contradicted by the consumer reviews that Block cites, none

23   of which suggest that those consumers were considering using Block.  Mot. 13.

24       *Finally*, the only new "fact" that Block identifies even potentially relevant to standing

25   is that Intuit "has a 'TurboTax v. H&R Block' webpage on which Intuit encourages consumers

26   to choose TurboTax instead of H&R Block" and that references the "expert final review."

27   Opp. 13 (citing Am. Counterclaims ¶72).  Block argues that the webpage is "aimed to suggest

28   that the 'expert final review' renders TurboTax superior to H&R Block."  *Id.*  That argument,

-8-

1    even if correct, only underscores that Block's allegations and theory of standing focus

2    improperly on expert final review generally and that Block fails to allege any facts to support

3    the allegation that the supposedly misleading statements are likely to harm Block.

4    **III.    BLOCK FAILS TO PLEAD PLAUSIBLE DECEPTIVE-ADVERTISING CLAIMS**

5            **A.    The Record, Properly Considered, Demonstrates That Block's Claims Are
                    Barred By Laches And Statutes Of Limitations**

6

7            Intuit's motion also established that Block's claims are barred by laches and statutes of

8    limitations. Mot. 13-15. Notwithstanding the fact that Intuit has run substantially the same

9    ads for at least the last five years, and that Block was or should have been aware of those ads,

10   *id.* at 14-15, Block waited until the 2024 tax season was nearly over to bring its counterclaims.

11   Intuit is obviously prejudiced by Block's unreasonable delay. *Id.* at 15. Block disputes none

12   of these facts, which justify dismissal of its counterclaims. *See Jarrow Formulas, Inc. v.*

13   *Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002); *Reveal Chat*, 471 F. Supp. 3d at 991.

14           Instead of engaging with those historic ads and Block's awareness of them on the

15   merits, Block offers three procedural arguments for why its claims should not be dismissed

16   based on laches and statutes of limitations. All three are meritless.

17           *First*, Block's unsupported insistence that its claims are somehow timely because "the

18   advertisements at issue … are from late 2023 and 2024, and some of them remain on Intuit's

19   website today," Opp. 22-23, misunderstands the laches doctrine applicable to Lanham Act

20   claims. With respect to "Lanham Act claims" where "the alleged violations are ongoing," "the

21   presumption of laches is triggered if any part of the claimed wrongful conduct occurred

22   beyond the limitations period." *Jarrow Formulas*, 304 F.3d at 837. And "the limitations

23   period may expire even though part of the defendant's conduct occurred within the limitations

24   period." *Id.* at 838 (emphasis added). "To hold otherwise would 'effectively swallow the rule

25   of laches, and render it a spineless defense.'" *Id.* at 837. On that basis, the court in *Jarrow*

26   *Formulas* held that the plaintiff's claims were time-barred, even though the alleged false

27   advertising remained ongoing, *id.* at 838-39, because the advertising claims began in 1985, the

28   plaintiff knew of the advertising since 1993, but did not file suit until 2000, *id.* at 832, after the

1    three-year limitations period, *id.* at 838.  Here, Intuit has been making substantially the same

2    advertising claims relating to expert final review since at least 2019, and Block knew or should

3    have known of that advertising, yet it did not file suit until several months into the 2024 tax

4    season—past the limitations period. Mot. 13-15.  That reality also bars Block's state law

5    claims under either laches or the statutes of limitations.  *See Jarrow*, 304 F.3d at 842; *Ste.*

6    *Genevieve Cnty. Levee Dist. #2 v. Luhr Bros.*, 288 S.W.3d 779, 785 (Mo. Ct. App. 2009).

7         *Second*, Block is wrong that Intuit's motion should be denied because laches is fact-

8    intensive and the right to relief must be, but here is not, "apparent on the face of the

9    complaint."  Opp. 23.  Block acknowledges, as it must, that laches can be decided at the

10   motion-to-dismiss stage.  *See id.* (citing *Reveal Chat*, 471 F. Supp. 3d at 991-992, 996, and

11   *Estate of Blue v. Cnty. Of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997)).  And Block does

12   not contest that most of the materials Intuit relies on for its laches argument are judicially

13   noticeable, *see* Opp. 10-11; *supra* p.4.  Instead, Block wrongly interprets "face of the

14   complaint" literally and argues that the judicially noticeable "historical ads" and Block

15   webpages cannot be considered.  That is wrong as a matter of law.  *See Reveal Chat*, 471 F.

16   Supp. 3d at 989 (recognizing that "matters judicially noticeable" may be considered on a

17   motion to dismiss on laches grounds).  Indeed, the Ninth Circuit has affirmed dismissal of a

18   complaint on timeliness grounds after the district court "t[ook] judicial notice of" documents

19   that supported the statute of limitations argument and undercut equitable tolling.  *Estate of*

20   *Blue*, 120 F.3d at 984.  The Ninth Circuit explained that, because of those judicially noticeable

21   documents, "all facts necessary to decide" those issues were "in the record" and "therefore [it]

22   was not error to decide the statute of limitations question on a motion to dismiss."  *Id.*  Block

23   offers no support for its contrary assertion that laches must be "apparent on the face of the

24   complaint" without considering judicially noticeable materials.

25        Here, as in *Estate of Blue*, "all facts necessary to decide" that Block's claims are barred

26   by laches are "in the record" through Block's counterclaims and judicially noticeable

27   materials.  Indeed, Block represented to the Court in a sworn declaration that Intuit "has

28   purported to include a final review by a tax expert for several years" and that "Block closely

-10-

1    monitors its competitors including the market leader, Intuit." Mot. 14-15 (citing Watts Decl.

2    ISO PI Opp.). The Court also can and should take notice of the TurboTax Live Assisted

3    advertisements from 2019 and 2020 that make substantially the same claims about expert final

4    reviews as the advertisements Block now challenges. *Id*. And the Court should take notice of

5    Block webpages and earnings call transcripts that show that Block was aware of, or should

6    have been aware of, those earlier ads and Intuit's products. *Id*. Tellingly, Block does not

7    argue on the merits that it was unaware of Intuit's advertising in 2019 and 2020 or that those

8    ads if considered undermine Intuit's laches and statutes of limitations arguments. Block

9    instead demands that the Court ignore them. On this properly considered record, Block's

10   claims are untimely and should be dismissed. *See Reveal Chat*, 471 F. Supp. 3d at 989.

11       *Third*, Block's quibbles about the noticeability of the 2019 earnings call transcript do

12   not alter that conclusion. As already explained, the 2019 earnings call transcript is judicially

13   noticeable. *See supra* p.5. But even if the transcript were not considered, the record still

14   shows that Block's amended counterclaims are barred by laches. Again, Block does not

15   dispute that Intuit—as "the market leader," Am. Counterclaims ¶65—is its most significant

16   competitor, or that it was aware of the challenged ads and Intuit's product features. Nor does

17   Block contest that it published judicially noticeable webpages that directly compared Block

18   and TurboTax products in 2019 and 2020. Mot. 15 (citing Exhibits J and K). Because those

19   webpages compared product features of Intuit and Block products, they show that Block was

20   in fact monitoring TurboTax's website and thus that it "knew or should have known" about the

21   supposed bases for its potential counterclaims years ago. *Jarrow*, 304 F.3d at 838.

22       **B.    Block Fails To Resuscitate Its Deficient Materiality Allegations**

23       As explained, Block's amended counterclaims again fail to plausibly plead sufficient

24   facts to establish that the "alleged 'deception … is likely to influence the purchasing decisions'

25   of reasonable consumers." Mot. 16-17. In response, and perpetuating the same mistake it

26   made in arguing standing, *supra* Section II, Block contends that it has "pled materiality … by

27   alleging how (1) Intuit misrepresented its 'expert final review,' and (2) the 'expert final

28   review' is an inherent quality or characteristic of its Live Assisted product and is a centerpiece

-11-

1   of Intuit's marketing." Opp. 20. Yet again Block ignores the Court's clear directive that

2   Block must allege "that the *allegedly false statement* is likely to influence the purchasing

3   decision of a reasonable consumer." MTD Order 8 (alterations omitted) (emphasis added).

4          Instead of adhering to the Court's mandate, Block argues that it need not allege that the

5   false statements are likely to influence consumers' purchasing decisions and that it instead can

6   establish materiality by alleging only that the expert final review is "an inherent quality or

7   characteristic of the product." Opp. 20 (citing MTD Order 8). That is wrong. As this Court,

8   the Ninth Circuit, and all the cases Block cites recognize, the ultimate question on materiality

9   is whether the allegedly deceptive advertising claim at issue is likely to influence consumers'

10  purchasing decisions. *See* MTD Order 8 (citing *Southland Sod Farms*, 108 F.3d at 1139);

11  Opp. 20-22; Order Granting In Part Intuit's Motion for Preliminary Injunction ("PI Order")

12  22-23. And while courts sometimes find that statements about an "an inherent quality or

13  characteristic" are material, Opp. 20, Block still must show that the allegedly deceptive

14  statements were significant enough to be influential, *see* PI Order 23.

15         At bottom, and regardless of whether the standard is framed in terms of inherent

16  characteristics, Block fails to allege sufficient facts to show that the challenged ads

17  misrepresented TurboTax Live Assisted in a way that would have impacted consumers'

18  purchasing decisions. Block offers no allegations establishing that it matters to consumers that

19  they may need to push a button to accept a final review prompt, or that they will only receive a

20  line-by-line review when they want or need one. That Block's allegations fall short is

21  confirmed by the Court's conclusion that it is "not … obvious" that the expert final review

22  "goes to 'the very nature' of an online tax preparation product." PI Order 23. Indeed, Block's

23  allegations fail to suggest that "a significant number of consumers selected Intuit's products

24  based on the expert final review feature"—let alone that a significant number chose TurboTax

25  because they believed that the final review was "automatic[]" and always line-by-line. *Id* at

26  23, 25. And Block cannot now plausibly or credibly contend that the final review is material

27  to consumers after arguing successfully at the preliminary-injunction stage that it is not.

28         Block's opposition arguments do not save these deficiencies. For example, its reliance

-12-

on Intuit's "acknowledge[ments]" and "assert[ions]" that an expert final review is a material

feature of TurboTax Live Assisted, and that consumers value a review by a live expert, Opp.

21, is insufficient because those statements only relate to the expert final review generally and

say nothing about the deception alleged.  And Block is wrong that it has plausibly pleaded

materiality by reciting consumer reviews that it asserts show that consumers "understood that,

with Live Assisted, an expert would review their taxes, that they chose Intuit's Live Assisted

product for that reason, and that they felt misled and duped when they did not receive what

they were promised."  Opp. 21.  Block's theory of deception is not that consumers do not

actually receive some form of final review, and so these cherry-picked reviews do nothing to

help them.  Moreover, as Intuit explained, Mot. 16-17, those reviews are facially implausible

because they are contradicted by the counterclaims and do not reflect the views of a significant

portion of consumers.  Block has no response.

Block's two remaining arguments concerning materiality are that "Intuit's fact-based

arguments are inappropriate," Opp. 21, and, when faced with its prior representation to the

Court that expert final reviews are immaterial to consumers, PI Hr'g Tr. 381:18-20, that Block

can assert the opposite here because it may take "inconsistent positions" at the pleading stage,

Opp. 22.  But Intuit's materiality arguments are not inappropriately "fact-based."  Opp. 21.

Intuit correctly identified that Block's allegations fail to set forth the facts needed to plausibly

plead that the *alleged deception* was material to consumers.  Mot. 16-17.  Intuit thus is not

relying on any facts; it is pointing out Block's failure to plead a valid claim.  And as explained,

*supra* p.6, Block is wrong that it "is of no consequence" "that Block has taken inconsistent

positions."  Opp. 22.  Block should not be permitted to repeatedly tell the Court that

TurboTax's expert final review is immaterial, and then turn around and allege that it is.

### C.    Block Cannot Avoid Its Own Admissions Recognizing What Is Clear From The Face Of The Ads—The Ads Are Not False Or Misleading

Block's amended counterclaims also fail to plausibly allege falsity.  None of the

advertisements expressly state that expert final reviews occur "automatically" and are always

"line-by-line."  Mot. 18-19.  Instead, Intuit delivers on the promises the ads *do* make, by

1    automatically prompting all consumers to receive a final review of their tax return that costs

2    nothing extra and that can be as comprehensive as a consumer wants.  *Id.* at 3-5, 19-20.

3         Block responds that it has adequately alleged that the challenged ads are impliedly

4    false.  Opp. 14-15.  But the Court need not ignore "common sense," *McKenna v. WhisperText*,

5    2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015), when assessing the ads—instead, the ads

6    must "plausibly suggest a likelihood to mislead," *Clorox Co. v. Reckitt Benckiser Grp. PLC*,

7    398 F. Supp. 3d 623, 636 (N.D. Cal. 2019).  Block's conclusory assertions about how

8    consumers allegedly interpret Intuit's advertisements are both unsupported by factual

9    allegations and implausible on their face.  Mot. 19.  Dismissal of Block's claims is thus

10   entirely appropriate.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115

11   (9th Cir. 2012); *Heartland Payments Sys., Inc. v. Mercury Payments Sys. LLC*, 2016 WL

12   304764, at *5 (N.D. Cal. Jan. 26, 2016).  And because Block's allegations are unsupported and

13   facially implausible, Block is also wrong that Intuit's falsity arguments "are premised *entirely*

14   on evidence beyond the scope of the Amended Counterclaims."  Opp. 19 (emphasis added).

15        Block's judicial admissions do confirm, however, that its allegations are baseless and

16   implausible.  Mot. 18-19.  Block has repeatedly told the Court that it understands that

17   TurboTax Live Assisted ads communicate that a "tax expert will talk to you about your

18   specific questions or concerns;" that "clients *can request* a 'final review' from a tax expert;"

19   and that consumers receive "a review by a live person at the end of the process *if the user*

20   *requests such a review*."  Mot. 19 (emphases added).  In fact, Block has asserted that Intuit

21   "does not advertise to the public what its 'final expert review' is" at all, meaning the

22   challenged ads do not communicate anything about how the final review works.  *Id.*

23        Block's amended counterclaims offer an entirely different and irreconcilable

24   interpretation of the ads compared to those prior representations.  Now Block alleges that

25   Intuit does "advertise to the public what its final expert review is."  According to Block,

26   Intuit's ads somehow convey that the final review is automatic and always line-by-line—not

27   that it must be requested and is merely an opportunity to "talk to you about your specific

28   questions or concerns," as Block previously represented.  Confronted with those admissions,

-14-

1   Block argues only that its prior statements should not be "binding." Opp. 19. As explained,

2   *supra* p.6, that argument fails. That Block has no substantive response beyond asking the

3   Court to disregard the sworn testimony of its executives underscores that its prior statements

4   and current allegations cannot be reconciled.

5         In any case, even if Block's prior admissions are not "binding" in a technical sense, the

6   Court can and should consider those statements as part of "its context specific inquiry based

7   on its judicial experience and common sense," because they demonstrate that Block's

8   allegations lack credibility and are thus implausible and should be disregarded. *McKenna*,

9   2015 WL 5264750, at *3; *see also Morales v. City & Cnty. of San Francisco*, 603 F.Supp.3d

10  841, 846 (N.D. Cal. 2022) ("'[T]he Court does not ignore the prior allegations in determining

11  the plausibility of the current pleadings' and is 'not required to accept as true [contradictory]

12  allegations in an amended complaint' without more facts."). Indeed, it "is no new principle in

13  the law any more than it is in life" that "when … any litigant speaks out of both sides of its

14  mouth, no one should be surprised if its latest utterance isn't the most convincing." *Bittner v.*

15  *United States*, 598 U.S. 85, 97 n.5 (2023) (cleaned up). It is also revealing that Block's falsity

16  allegations are no more detailed than in its initial counterclaims. Those details are absent even

17  though Block had the benefit of months of merits discovery, during which Intuit produced

18  thousands of pages of documents and during which Block deposed multiple Intuit executives.

19        Simply put: Block does not believe its own allegations, has no facts to back them up,

20  and is unable to offer any consumer testing in support. That reality underscores what is clear

21  from the face of the ads—Block's deception allegations are not plausible.

22  **IV.   BLOCK'S STATE-LAW COUNTERCLAIMS FAIL FOR THE SAME REASONS AS ITS
        LANHAM ACT COUNTERCLAIM**

23

24        As explained in Intuit's motion to dismiss, because Block's Lanham Act counterclaim

25  must be dismissed for failing to state a claim under Rule 12(b)(6), so too must Block's state-

26  law counterclaims. *See* Mot. 21-22.

27                              **CONCLUSION**

28        The Court should dismiss Block's amended counterclaims with prejudice.

-15-

Dated: November 25, 2024

Respectfully submitted,

*/s/  Sonal N. Mehta*

Sonal N. Mehta (CA Bar No. 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Kalyn Heyen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
David.Gringer@wilmerhale.com
Kalyn.Heyen@wilmerhale.com

Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 230-6363
Derek.Woodman@wilmerhale.com

*Attorneys for Intuit Inc*