1

2

3      **UNITED STATES DISTRICT COURT**

4      **NORTHERN DISTRICT OF CALIFORNIA**

5      **SAN JOSE DIVISION**

6

7  INTUIT INC.,                                    Case No.  5:24-cv-00253-BLF

8              Plaintiff,

9      v.                                          **ORDER GRANTING INTUIT INC.'S
                                                    MOTION TO DISMISS HRB DIGITAL
10 HRB TAX GROUP, INC., et al.,                    LLC'S FIRST AMENDED
                                                    COUNTERCLAIMS**
11             Defendants.
                                                    [Re:  Dkt. No. 154]
12 HRB DIGITAL LLC,

13             Counterclaim-Plaintiff,

14     v.

15 INTUIT INC.,

16             Counterclaim-Defendant.

17

18        Before the Court is Plaintiff/Counterclaim-Defendant Intuit Inc.'s ("Intuit") Motion to

19 Dismiss HRB Digital LLC's First Amended Counterclaims.  Dkt. No. 154 ("Mot.").

20 Defendant/Counterclaim-Plaintiff HRB Digital LLC ("Block") opposes the motion, Dkt. No. 163

21 ("Opp."), and Intuit filed a Reply in support of its motion, Dkt. No. 168 ("Reply").  The Court

22 held a hearing on the motions on February 27, 2025.  *See* Dkt. No. 192.

23        For the reasons stated below, the Court GRANTS Intuit Inc.'s Motion to Dismiss HRB

24 Digital LLC's First Amended Counterclaims.

25 **I.    BACKGROUND**

26        **A.  Factual Background**

27        The following are the facts as stated in Block's Counterclaims.  For purposes of this

28 motion, the Court accepts the well-pleaded facts in Block's First Amended Counterclaims as true.

*United States District Court*
*Northern District of California*

Counterclaim-Plaintiff HRB Digital LLC is a subsidiary of H&R Block, Inc. that participates in marketing and selling various tax-preparation products and services, including online tax-preparation services. Dkt. No. 125 ("Amend. Countercl.") ¶ 10. Counterclaim-Defendant Intuit Inc. markets and sells TurboTax, a brand of online tax-preparation products and services. *Id.* ¶ 11. The TurboTax brand suite of products includes three tiers: (1) "Do-It-Yourself;" (2) "Live Assisted;" and (3) "Live Full Service." *Id.* ¶ 17. Do-It-Yourself and Live Assisted are online products that permit taxpayers to prepare their own tax returns; the Live Full Service tier involves an Intuit-associated tax professional preparing a taxpayer's return on his or her behalf. *Id.*

Intuit's Live Assisted product includes an "expert final review" feature that Block alleges Intuit markets as "mean[ing] that a live tax expert will automatically review [a consumer's] entire return before it is submitted to make sure that it is completely accurate and that their tax return was done correctly." *Id.* ¶ 1. According to Block, Intuit's advertising related to expert final review contains two misrepresentations. *Id.* ¶ 18. "First, Intuit conveys that the live 'expert final review' is a review that is automatically conducted for all tax returns without a consumer having to ask." *Id.* "Second, Intuit also conveys that the live 'expert final review' always entails a comprehensive, line-by-line review of a consumer's tax return, to provide '100% accuracy guaranteed.'" *Id.* Block alleges that, in reality, consumers using TurboTax Live Assisted are "required to take affirmative steps to request an 'expert final review' by an Intuit tax expert," *id.* ¶ 31, including by "click[ing] a button that indicates that they have questions, enter[ing] their specific question or questions about their tax return, enter[ing] their contact information, connect[ing] with an expert, and receiv[ing] confirmation from Intuit that an expert is available to consult with them," *id.* ¶ 3. Then, the review is often "limited to answering a consumer's final questions and does not involve a comprehensive review" in most situations. *Id.* ¶ 62.

### B. Procedural Background

On January 15, 2024, Intuit filed a complaint against H&R Block, Inc. in order to challenge various allegedly false and misleading advertising claims Block made regarding its tax preparation products. Dkt. No. 1. Intuit sought a temporary restraining order that same day. Dkt.

No. 6.  Intuit filed an amended complaint on January 18, 2024, adding HRB Tax Group, Inc. and HRB Digital LLC as defendants.  Dkt. No. 18.  Following the January 22, 2024 hearing on Intuit's motion for a temporary restraining order, *see* Dkt. No. 32, the Court entered the Parties' Consent Order on January 29, 2024, Dkt. No. 38.  As part of that Consent Order, Block agreed to voluntarily remove or modify various challenged advertising statements until the Court had an opportunity to hear and rule upon Intuit's motion for a preliminary injunction.  *Id.*

On February 27, 2024, HRB Digital LLC and HRB Tax Group, Inc. answered Intuit's Amended Complaint.  Dkt. No. 49.  Approximately three weeks later, they filed an amended answer and Block asserted counterclaims against Intuit that mirrored Intuit's claims.  Dkt. No. 50.  Intuit moved to dismiss Block's counterclaims and to strike certain allegations within the counterclaims.  Dkt. No. 64.  The Court granted Intuit's motions on September 5, 2024, Dkt. No. 121, and Block filed Amended Counterclaims on September 9, 2024, Dkt. No. 125.  Block's Amended Counterclaims assert four causes of action: (1) a claim for violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) a claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) a claim for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and (4) a claim for violation of Missouri common law unfair competition in the form of false advertising.  Dkt. No. 125 ¶¶ 81–110.  Intuit again moved to dismiss.  Dkt. No. 154.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Since "[t]he party invoking federal jurisdiction[] bears the burden of establishing" the elements of Article III standing, a counterclaim plaintiff must be able to demonstrate regarding its counterclaims (1) an "injury in fact" that is (2) "fairly traceable to the challenged conduct of the defendant," and (3) likely to be "redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023).  "[E]ach

1    element must be supported . . . with the manner and degree of evidence required at the successive

2    stages of the litigation." *Lujan*, 504 U.S. at 561.

3    **B.  Rule 12(b)(6)**

4    "A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure

5    12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint."

6    *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015).  Under Federal Rule of

7    Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which

8    relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to

9    state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

10   (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw

11   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

12   556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a

13   defendant has acted unlawfully." *Id.*  While courts generally do not require "heightened fact

14   pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the

15   speculative level." *See Twombly*, 550 U.S. at 555, 570.  However, "[i]n alleging fraud or mistake,

16   a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ.

17   P. 9(b).

18   When determining whether a claim has been stated, the Court accepts as true all well-pled

19   factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP*

20   *Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as

21   true allegations that contradict matters properly subject to judicial notice" or "allegations that are

22   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

23   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

24   omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and

25   matters judicially noticeable.  *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 938 (9th Cir. 2018).

26   **C.  Leave to Amend**

27   In deciding whether to grant leave to amend, the Court must consider the factors set forth

28   by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

United States District Court
Northern District of California

4

Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III.  DISCUSSION

### A. Standing

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to show constitutional standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, "allegations of direct competition, standing alone," are not enough to establish Article III standing on a false advertising claim. *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-05638, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020). To adequately allege a competitive injury for the purpose of Article III standing, a party must show "injury resulting from the defendant's conduct," *Lujan*, 504 U.S. at 561—for example, at least two links in "a chain of inferences showing how [the] defendant's false advertising could harm [the] plaintiff's business." *Allbirds*, 2020 WL 6826487, at *4.

The Court previously dismissed Block's Counterclaims for failure to adequately allege Article III standing, Dkt. No. 121, and Intuit argues that Block's Amended Counterclaims suffer the same fatal flaw, Mot. at 10–13. Specifically, Intuit claims that "Block continues to mistakenly argue that it has standing merely because it competes with Intuit and the 'expert final review' is an important factor that influences consumer purchasing decisions." *Id.* at 11. On Intuit's reading, Block's Amended Counterclaims do not show that the alleged misrepresentations forming the basis for Block's claims cause harm to Block's business. *See id.*

Block responds that it can adequately allege standing by showing at least two links in "a chance of inferences showing how defendant's false advertising could harm plaintiff's business," which Block argues that it has done by alleging: (1) Block and Intuit are direct competitors in the

online tax preparation industry; and (2) that Intuit's false advertising "results in loss of business and revenue to Block because, without the false impression created by Intuit's advertising, consumers would likely decide to purchase" one of Block's products instead.  Opp. at 12 (citing Amend. Countercl. ¶¶ 8, 65, 67, 69).  Block elaborates that "Intuit's advertisements tout the 'expert final review' feature of Live Assisted—and its automatic and comprehensive nature—to entice consumers to favor Intuit over Block, which results in lost profits to Block."  *Id.* at 13 (citing Amend. Countercl. ¶ 70).

The Court finds it to be a close question, but ultimately concludes that Block's Amended Counterclaims adequately allege constitutional standing.  While the Court appreciates Intuit's careful examination of the *Allbirds* and *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011), cases, it appears that Intuit's position inadvertently adopts a heightened Article III standing requirement.  On one hand, it is correct that "[i]n a false advertising suit, a plaintiff establishes Article III injury if 'some consumers who bought the defendant['s] product under [a] mistaken belief' fostered by the defendant 'would have otherwise bought the plaintiff['s] product.'"  *Id.* at 825 (quoting *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001)).  On the other hand, the Court does not agree with Intuit that—for Article III standing purposes—the chain of inferences alleged must include specific allegations of the materiality to consumers of the purported deception.  Imposing this requirement would seem to "confuse[] the jurisdictional inquiry (does the court have power under Article III to hear the case?) with the merits inquiry (did the defendant violate the law?)."  *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1094 (9th Cir. 2017) (citing *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)); *see Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 834 (9th Cir. 2021) ("One does not lose standing to sue just because his claims may fail on the merits.").  In other words, "[a]lthough a merits question may look similar to the standing question of whether there is an injury in fact traceable to the relevant law under which the plaintiff has brought suit, confusing the two 'conflate[s] standing with the merits.'"  *Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023) (quoting *Lazar v. Kroncke*, 862 F.3d 1186, 1198 (9th Cir. 2017)).  Instead, "[t]he jurisdictional question of standing [should] precede[], . . . not require, analysis of

1    the merits." *See AshBritt, Inc. v. Ghilarducci*, No. 20-cv-04612, 2020 WL 7388071, at *6 (N.D.

2    Cal. Dec. 16, 2020) (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d

3    1184, 1189 n.10 (9th Cir. 2008)).

4            Here, allegations of the materiality of the specific identified misrepresentations are, of

5    course, necessary for Block to state a claim.  The Court will turn to that issue in the next section of

6    this Order.  For constitutional standing purposes, though, the Court concludes that it is enough to

7    show that "[s]ales gained by one are . . . likely to come at the other's expense" and that the

8    challenged advertisements are logically likely to lead the advertising party to "capture a larger

9    share of the . . . market." *TrafficSchool.com*, 653 F.3d at 825–26; *see also Strategic Partners, Inc.*

10   *v. FIGS, Inc.*, No. 19-cv-2286, 2019 WL 12435672, at *4 (C.D. Cal. Aug. 19, 2019) (finding

11   allegations that defendant was "a competitor and that its allegedly wrongful conduct allowed it to

12   gain an upper hand in the market . . . sufficient for standing purposes").  This is because "[w]hile

13   'the causal connection put forward for standing purposes cannot be too speculative or rely on

14   conjecture about the behavior of other parties,' it 'need not be so airtight at this stage of the

15   litigation as to demonstrate that the plaintiff[] would succeed on the merits.'"  *Intel Corp. v. U.S.*

16   *Citizenship & Immigr. Servs.*, 739 F. Supp. 3d 762, 771 (N.D. Cal. 2024) (quoting *Pac. Lumber*

17   *Co.*, 230 F.3d at 1152).

18           For example, in *Allbirds*, the Court could "reasonably infer that both parties compete for

19   the same revenue as both companies sell wool running shoes in the same geographic market," but

20   the problem was that there was not "evidence that the material of shoes is an important factor for

21   consumers in deciding which shoes to buy." *Allbirds*, 2020 WL 6826487, at *4.  Thus, it was not

22   clear that advertising stating that the defendant's products were "natural" or made of "natural

23   materials" would affect buyer decisions.  *See id.* at *1, *4.  But the question of whether the

24   challenged ads might affect the parties' respective market shares was somewhat distinct from the

25   question of how, precisely, the ads were false or misleading.  Regarding the latter issue, the party

26   asserting the false advertising claim suggested that "advertising of . . . products as 'natural' or

27   'made of natural materials' conveys that the products are made *entirely* of natural (*i.e.*, non-

28   synthetic) materials," while the defendant party's products "contain[ed] synthetic polyamides."

                                                    7

*Id.* at *1 (emphasis added) (citations omitted).  In other words, the alleged deception pertained to whether the shoes were constructed *entirely out of natural materials*.  Yet in the standing inquiry, the Court sought only a showing that *shoe material* might affect purchasing decisions, such that an advertisement with content suggesting that a shoe was "natural" might influence market share in the relevant industry.  *Id.* at *4.  The Court did not require a specific showing that consumers' purchasing decisions were influenced by the mistaken belief that the shoe was 100 percent natural.

Here, too, the question of whether the challenged ads from Intuit might affect buyers' decisions is distinguishable from the question of how exactly the content of those ads is false or misleading.  As a first link in the chain of inferences supporting standing, Block has adequately alleged that Block and Intuit are direct competitors, such that the Court can reasonably infer that these Parties compete for the same revenue in the online tax preparation product market.  Then, as Block explains, the second link in the chain is that false advertising related to expert final review is likely to affect consumer purchasing decisions, *see* Amend. Countercl. ¶¶ 70–71, because the consumers read those advertisements and "mistakenly believe their purchase of Intuit's product includes an automatic, line-by-line expert final review" that renders the product superior to Block's products, *id.* ¶¶ 70, 72.  As the next section of this Order will reveal, the Court does not see adequate allegations supporting Block's assertion that consumers' decisions are specifically animated by the suggestion that expert final review is automatic or comprehensive.  However, the Court *does* see express allegations that expert final review is material to consumers.  *E.g.*, Amend. Countercl. ¶¶ 58–59.  Therefore, the Court finds it reasonable to infer that the challenged advertisements—which mention expert final review—may draw sales away from Block.  *See Allbirds*, 2020 WL 6826487, at *4.  Thus, Intuit's alleged wrongdoing is "fairly traceable" to an injury allegedly suffered by Block—even if, ultimately, Block fails to establish all of the elements necessary to proceed on the merits of its claims.

In sum, the Court concludes that Block has done enough to survive Intuit's motion to dismiss on constitutional standing grounds by showing a chain of inferences indicating that the challenged ads are likely to divert sales from Block to Intuit.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1

### B.  Adequacy of the Allegations

2    The Parties agree that all four of Block's causes of action in the Amended Counterclaims

3    are premised upon the same false advertising standard, which requires a showing of:

4    (1) a false statement of fact by the defendant in a commercial advertisement about its own
5    or another's product; (2) the statement actually deceived or has the tendency to deceive a
     substantial segment of its audience; (3) the deception is material, in that it is likely to
6    influence the purchasing decision; (4) the defendant caused its false statement to enter
     interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of
7    the false statement, either by direct diversion of sales from itself to defendant or by a
     lessening of the goodwill associated with its products.

8

9    *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Intuit challenges

10   the adequacy of Block's allegations regarding the first and third factors of the *Southland Sod* test

11   (falsity and materiality).  *See* Mot. at 16–21.  The Amended Counterclaims adequately allege

12   falsity.  However, as was foreshadowed by the previous section of this Order, the Court finds that

13   Block has failed to allege materiality and dismisses the Amended Counterclaims on that ground.

14   ### 1.  Falsity

15   On the first prong of the *Southland Sod* test, Intuit argues that Block has failed to identify a

16   "false statement of fact" in Intuit's advertisements.  Mot. at 18–21.  "To demonstrate falsity within

17   the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either

18   on its face or by necessary implication, or that the statement was literally true but likely to mislead

19   or confuse consumers."  *Southland Sod*, 108 F.3d at 1139 (citing *Castrol Inc. v. Pennzoil Co.*, 987

20   F.2d 939, 943, 946 (3d Cir. 1993)).  If falsity is premised upon a statement that is literally true but

21   likely to mislead consumers, the plaintiff must be able to "plausibly suggest a likelihood to

22   mislead."  *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019).

23   Intuit argues that "Block's allegations do not plausibly suggest a likelihood to mislead"

24   because Block's counsel and employees have made various concessions throughout this lawsuit

25   suggesting that Intuit's advertising makes clear to consumers that the expert final review is not

26   always automatic or comprehensive.  Mot. at 18–19.  Moreover, Intuit points out that none of the

27   advertisements "expressly state" that the review has those features, and that Block was unable to

28   include specific allegations of confusion despite having had the benefit of months of discovery.

1   *Id.* at 19–20.

2   Block responds that "whether a particular statement is false and misleading is a question of

3   fact that is inappropriate for adjudication on a motion to dismiss."  Opp. at 14–15 (quoting *Instant*

4   *Checkmate, Inc. v. Background Alert, Inc.*, No. 14-cv-01182, 2014 WL 12526275, at *5 (S.D. Cal.

5   Dec. 5, 2014) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.

6   2008)).  Block also correctly emphasizes that, at the hearing on Intuit's first motion to dismiss,

7   the Court believed that Block had likely met its burden to adequately plead falsity under the Rule

8   9(b) standard.  *Id.* at 15.

9   Reviewing Block's First Amended Counterclaims, the Court finds that Block has crossed

10  the threshold to adequately plead falsity—barely.  As illustrated by Block's helpful chart, *see* Opp.

11  at 16–19, Block has identified the "who, what, when, where, and how" of each challenged

12  advertisement.  For example, Block points to the following advertisement on Intuit's website:



23  Block identifies that Intuit ran this advertisement on its website in March 2024, Amend.

24  Countercl. ¶ 20—the who, what, when, and where—and also explains the "how": the ad is

25  misleading because it suggests that review will be automatic and line-by-line, including because

26  the ad reads "I finished reviewing your taxes," followed by a checklist suggesting that the review

27  covered all of the following areas: "Income & Wages," "Deductions & Credits," "California State

28  Taxes," "Federal Taxes," and "Tax Returns."  *Id.* ¶¶ 19–20; Opp. at 16.  Combined with the

United States District Court
Northern District of California

1    phrases "[k]now it's done right" and "you can be 100% confident it's done right," the

2    advertisement plausibly suggests that a consumer using this product can be assured that no errors

3    appear in their tax return—and, by extension, that the return was reviewed in its entirety (since

4    otherwise, how could one be sure that there were *absolutely no* errors?).  It is true that the

5    advertisement says only that "experts *can* review your tax return," and not that they affirmatively

6    will do so.  Amend. Countercl. ¶ 20 (emphasis added).  However, although Block layers many

7    assumptions to reach its allegation that Intuit's ads are misleading, the Court does not think it

8    wholly implausible that a consumer could still be misled as to whether the review is automatic and

9    comprehensive. As just one consideration, that vague limiting language appears in much smaller

10   text than "Know it's done right with an expert final review," so the Court finds it plausible that a

11   consumer might simply miss the word "can" and assume, based on the remainder of the ad, that

12   the review will occur without further prompting.  Whether that is a reasonable conclusion is best

13   determined on a developed record.

14          The same considerations support the adequacy of Block's pleading with regard to the

15   alleged falsity of each identified advertisement.  Ultimately, the finder of fact could determine that

16   Intuit's advertising statements are not likely to mislead consumers, but it is "rare" for a court to

17   determine, as a matter of law, that an advertising claim is not misleading.  *See Tobin v. Procter &*

18   *Gamble Co.*, No. 23-cv-05061, 2024 WL 1560050, at *4 (N.D. Cal. Apr. 9, 2024) (citing *Williams*

19   *v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  Nor is Block obliged to come forward

20   with actual evidence of consumer confusion at this stage in the litigation.  *See Clorox Co.*, 398 F.

21   Supp. 3d at 636 ("[D]ismissal of Clorox's 'likely to mislead' claims is not warranted merely

22   because Clorox has not demonstrated actual deception at this stage.").  And the Court agrees with

23   Block that the various statements Intuit identifies as "judicial admissions" are not unequivocal

24   enough to bind Block at the motion to dismiss stage.  "The purpose of the doctrine of judicial

25   admissions is to 'act[] as a substitute for evidence in that it does away with the need for evidence

26   in regard to the subject matter of the judicial admission.'"  *Nat'l Abortion Fed'n v. Ctr. for Med.*

27   *Progress*, 134 F. Supp. 3d 1199, 1205 (N.D. Cal. 2015) (alterations in original) (quoting *State*

28   *Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968)); *see Am. Title Ins.*

1    *Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal

2    admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing

3    wholly with the need for proof of the fact." (citation omitted)).  Accordingly, "[t]o qualify as a

4    judicial admission, the admission must be 'deliberate, clear, and unequivocal.'"  *In re Twitter, Inc.*

5    *Sec. Litig.*, No. 16-cv-05314, 2020 WL 5904407, at *1 (N.D. Cal. Oct. 6, 2020) (citation omitted).

6           Most of the statements identified by Intuit as "judicial admissions" reflect only that

7    Block's counsel and high-level executives understood that expert final review is not always

8    automatic or comprehensive.  *E.g.*, Dkt. No. 26 (Declaration of Heather Watts in Support of

9    Opposition to Plaintiff's Motion for Temporary Restraining Order) ¶ 32; Dkt. No. 21 (Block's

10   Opposition to Intuit's Motion for Temporary Restraining Order) at 6–8; Dkt. No. 149 (Transcript

11   of Preliminary Injunction Hearing) at 106:11–16.  Naturally, these individuals would have a much

12   deeper understanding of how expert final review works relative to the average consumer, since

13   they had been embroiled in litigation (and discovery) related to the feature for months at the time

14   those statements were made.  In any event, "statements of fact contained in a brief"—or at a

15   hearing—"*may* be considered admissions of the party *in the discretion of the district court*," and

16   this Court declines to consider those statements as judicial admissions for purposes of the motion

17   to dismiss.  *Lacelaw Corp.*, 861 F.2d at 227 (emphasis added); *see In re Twitter, Inc. Sec. Litig.*,

18   2020 WL 5904407, at *2 ("[T]he Court declines to exercise its discretion to treat the statement as

19   a judicial admission.").

20          In short, the Court concludes that Block has adequately pled falsity in its Amended

21   Counterclaims.

22       **2.  Materiality**

23          The materiality factor of the *Southland Sod* test inquires into whether *the deception* at

24   issue is material to consumers.  *Southland Sod*, 108 F.3d at 1139.  Here, the alleged deception is

25   (1) "that the live 'expert final review' . . . is automatically conducted for all tax returns without a

26   consumer having to ask," and (2) that "the live 'expert final review' always entails a

27   comprehensive, line-by-line review of a consumer's tax return."  Amend. Countercl. ¶ 18.

28   Therefore, Block is required to include allegations indicating that the automatic and/or

United States District Court
Northern District of California

1    comprehensive nature of expert final review is what influences consumer purchasing decisions

2    related to Intuit's challenged advertisements.

3        Intuit argues that Block has failed to do so.  Mot. at 16–17.  Pointing to Block's various

4    assertions that "[i]f Intuit's consumers knew the truth . . . their decision to purchase Intuit's

5    product would be impacted," Amend. Countercl. ¶¶ 60, 62, and that "[t]here is a material

6    difference between" "the ability to ask questions of a human tax expert" and an expert "looking at

7    the consumer's return before it is filed, *id. ¶* 78, Intuit argues that Block's materiality assertions

8    are conclusory and targeted more generally to the expert final review feature—as opposed to the

9    alleged deception over whether that feature entails an automatic, comprehensive review.  Mot. at

10   16–17.  Intuit also challenges Block's reliance on consumer reviews in attempting to establish

11   materiality, saying that "the isolated reviews are not reliable representations of consumers'

12   experiences" and do not show that the alleged misrepresentations about a comprehensive,

13   automatic review were material.  *Id.* at 17.

14       Block responds that it "has sufficiently pled materiality in its Amended Counterclaims" by

15   alleging that "(1) Intuit misrepresented its 'expert final review,' [and] (2) the 'expert final review'

16   is an inherent quality or characteristic of its Live Assisted product and is a centerpiece of Intuit's

17   marketing."  Opp. at 20 (citing Amend. Countercl. ¶¶ 74–80).  In other words, Block says,

18   "Intuit's false advertisements regarding its 'expert final review' create a false impression in the

19   market that the feature is materially more beneficial than it claims to be, in a way that would affect

20   consumers' purchasing decisions."  Opp. at 21.  Moreover, Block points out that Intuit itself

21   agrees that expert final review is a material feature.  *Id.*

22       Block's main argument that the alleged deceptive statements are material because they

23   "misrepresent[] an inherent quality or characteristic of the product" is not persuasive.  *See* Opp. at

24   20.  An inherent quality or characteristic is one that goes to "the very nature" of the product in

25   question, as "the amount of beef in a burger is an inherent quality or characteristic of a burger,"

26   thus going "'to the very nature' of [the] burger product."  *In-N-Out Burgers v. Smashburger IP*

27   *Holder LLC*, No. 17-cv-1474, 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019)).  Here, in

28   contrast, the expert final review feature does not go to the very nature of an online tax preparation

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    product—rather, the heart of such a product would seem to be the online tax forms the consumer

2    uses to prepare their own return.  The possibility of a review by a tax professional is a benefit that

3    might improve the consumer's experience, but the Court is not persuaded that its presence or

4    absence would alter the fundamental nature of the product.

5          Setting aside the "inherent quality or characteristic" argument, Block's various assertions

6    regarding materiality muddy the distinction between deception related to *a feature that is material*

7    and deception that *is itself material*.  Although at odds with Block's position at the preliminary

8    injunction hearing that expert final review is *not* a material feature, Block's current position

9    appears to be consistent with Intuit's: the availability of expert final review is material to

10   consumers, in that it is likely to affect purchasing decisions.  *See* Amend. Countercl. ¶ 71; Opp. at

11   20.  There is no alleged deception, however, about the *availability* of the expert final review

12   feature in Intuit's Live Assisted product.  The deception Block targets is narrower than that,

13   concerning only whether expert final review is automatic and/or comprehensive—yet the Court is

14   unconvinced that Block has adequately alleged facts indicating that consumers' purchasing

15   decisions were based upon their belief that expert final review would occur automatically or

16   involve a line-by-line review of the entire tax return.

17         In its opposition brief and at oral argument, Block pointed the Court to a number of

18   paragraphs in the Amended Counterclaims that it said serve to allege materiality.  Some of those

19   paragraphs clearly pertain only to the materiality of expert final review, rather than the materiality

20   of the alleged deception.  For example, one paragraph states that the "offer of an 'expert final

21   review' drives positive conversion for Intuit."  Amend. Countercl. ¶ 59.  Another states that

22   "Intuit's own data shows" that customers "place a lot of value in knowing that an expert is

23   available to provide a final review of their tax return."  *Id.* ¶ 58; *see also id.* ¶ 78.  Those

24   statements adequately allege that *expert final review* is material to consumers, but they do not

25   support the assertion that the alleged deception regarding whether it is automatic or

26   comprehensive is material.

27         There are some paragraphs that include statements targeting the comprehensive and/or

28   automatic nature of expert final review specifically, but those paragraphs do so in a conclusory

14

manner, to wit: "Intuit's false and misleading statements are duping consumers into purchasing Intuit's product by making them believe they will automatically receive a service valued by consumers—a live, final, line-by-line review of their tax return by a tax expert, which will occur automatically and without inconveniencing consumers with additional actions on their part, and guaranteed to ensure their tax returns are 100% accurate—that is not actually included with Intuit's TT Live Assisted product."  Amend. Countercl. ¶ 63.  The problem with this paragraph is that everything between the em dashes is editorializing on Block's part.  The factual allegation is simply that Intuit's ads make consumers "believe they will automatically receive a service valued by consumers . . . that is not actually included" with Live Assisted.  Because Block is unable to allege any other facts indicating that consumers specifically make their purchasing decisions based upon the allegedly automatic and/or comprehensive nature of expert final review—instead of, for example, just the knowledge that an expert is available for some kind of final review, should the consumer want that—Block strategically defines the "service valued by consumers" to include those features.  The Court finds this wordsmithing effort to be an "unwarranted deduction[] of fact, or unreasonable inference[]."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.  Without further supporting facts, it is not reasonable to infer that consumers' purchasing decisions are animated by a belief that the expert review would be line-by-line or automatic (as opposed to inferring that consumers are motivated by the belief that some form of expert review is available at no extra charge).

Block has pointed to a few customer reviews suggesting frustration with the advertising about expert final review.  *See* Amend. Countercl. ¶¶ 47–54.  However, these reviews do not support Block's claim of materiality.  Indeed, Block itself argues that the consumer reviews demonstrate that consumers believed based on the advertisements that "an expert would review their taxes . . . and . . . they felt misled and duped when they did not receive what they were promised."  Opp. at 21 (citing Amend. Countercl. ¶¶ 47–56, 80); *see also* Dkt. No. 195 ("Hr'g Tr.") at 10:20–25 (arguing that the reviews show "consumers are picking [Intuit's product] because they thought they were getting an expert final review . . . that they ultimately don't get").  But the deception alleged is not whether customers would *receive* an expert final review; rather, it

1    is specifically whether that review is automatic and/or comprehensive.  In any event, even if the

2    Court accepts that the reviews show that some consumers were confused specifically about

3    whether the review would be automatic or line-by-line, a handful of select consumer reviews do

4    not support the inference that the alleged deception is material to the "reasonable consumer."  *See*

5    *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280, 2022 WL 20286688, at *7 n.6

6    (N.D. Cal. Feb. 24, 2022) (falsity and materiality are assessed based on a "reasonable consumer"

7    standard).

8         Accordingly, Block has failed to allege facts showing that the deception itself is material,

9    as is required for its claims to survive a 12(b)(6) motion.  Since the failure to adequately allege

10   materiality is fatal to Block's Amended Counterclaims, the Court need not consider whether the

11   claims are barred by laches.  The Court hereby DISMISSES Block's Amended Counterclaims, all

12   of which rely on the same *Southland Sod* test.

13        The Court has already given Block an opportunity to amend its Counterclaims.  In fact,

14   Block submitted proposed Amended Counterclaims with its opposition to Intuit's first motion to

15   dismiss, *see* Dkt. No. 67-1, and Block received feedback on both its original Counterclaims and

16   those proposed Amended Counterclaims at the hearing on Intuit's first motion to dismiss, *see* Dkt.

17   No. 112 at 4, 29.  The Court is therefore surprised that Block has still failed to adequately allege

18   materiality in its third attempt at asserting its Counterclaims, and generally would not give leave to

19   amend in this situation.  *See Eminence Capital*, 316 F.3d at 1052.  However, while the Court is

20   somewhat skeptical that there are additional allegations to be pled, the Court will permit Block

21   one final opportunity to amend its materiality allegations only.  No other sections of the Amended

22   Counterclaims may be altered.

23   **IV.    ORDER**

24        For the foregoing reasons, IT IS HEREBY ORDERED that Block's Amended

25   Counterclaims are DISMISSED.  This dismissal is WITH LEAVE TO AMEND as to the

26   materiality allegations *only*.  In light of the narrowness of the permitted amendment, any further

27   motion to dismiss Block's Counterclaims shall be subject to the following page limits:

28        Intuit's motion shall be no longer than 10 pages;

United States District Court
Northern District of California

1    Block's opposition shall be no longer than 10 pages;

2    Intuit's reply brief shall be no longer than 7 pages.

3    Block's Second Amended Counterclaims shall be filed within fourteen (14) days.

4

5    **IT IS SO ORDERED.**

6

7    Dated:  April 22, 2025

8    _____
     BETH LABSON FREEMAN
9    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California